IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONALD JONES,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Case No: 1:07-CV-0567-CC-RGV
                                 )
WACKENHUT % GOOGLE INC.,         )
                                 )
        Defendant.               )

## MEMORANDUM OF LAW IN SUPPORT OF THE WACKENHUT CORPORATION'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant The Wackenhut Corporation ("Wackenhut"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## INTRODUCTION

In this straightforward discrimination and retaliation case, Plaintiff, who is proceeding pro se, alleges that Wackenhut discriminated against him based on his race (African-American) and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. Plaintiff also alleges that Wackenhut discriminated against him based on his age (64 when he resigned) in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

Plaintiff was formerly employed with Wackenhut as a security guard, and he worked on a guarding assignment at Google, Inc. ("Google"), a Wackenhut client. On July 21, 2006, a Google manager complained to Wackenhut that Plaintiff was sleeping at his security post while on duty. Plaintiff admits that Wackenhut received that complaint from Google. Nonetheless, Plaintiff personally believes that Wackenhut discriminated against him by allegedly suspending him from his Google assignment and later ending that assignment. Plaintiff also alleges that Wackenhut retaliated against him in response to his filing of three charges with the Equal Employment Opportunity Commission ("EEOC").

The record evidence, however, reflects that Plaintiff was neither discriminated against nor retaliated against, that no genuine issue of material fact exists with respect to Plaintiff's claims, and thus that his claims fail as a matter of law. Plaintiff's lawsuit is another example of Plaintiff's propensity for asserting frivolous discrimination claims. Indeed, Plaintiff acknowledged that he has filed EEOC charges against his last four employers. Although he personally believes that employers in the State of Georgia "have a very poor opinion towards blacks," he has not offered any evidence that Wackenhut took any actions against him based on his race, age, or engagement in a protected activity. Plaintiff has not alleged that he was subjected to any discriminatory remarks during his Wackenhut employment, and he has failed to identify any similarly situated employees outside of his protected classes who were treated more favorably than him. Plaintiff's personal beliefs about discrimination and retaliation are not sufficient to withstand summary judgment.

# STATEMENT OF FACTS

## I. WACKENHUT'S OPERATIONS

Wackenhut provides commercial security services to customers on a nationwide basis. (Declaration of Jennifer Turner ("Turner Decl.") at ¶ 2, attached hereto as Exhibit A). Wackenhut employs security guards, who have numerous job duties, including patrolling customer job sites, reporting security breaches, and communicating with emergency services when necessary. (Id. at ¶ 3).

Wackenhut's clients determine the number of security guards needed for their businesses and the hours of those guarding assignments. (Id. at ¶ 4; Deposition of Donald Jones ("Pl. Dep.") at 60, transcript attached as Exhibit B). Because Wackenhut's business is premised on providing service at or above the customer's expectations, if a customer instructs Wackenhut to end the assignment of a security guard for legitimate reasons, Wackenhut complies with the customer's request. (Turner Decl. at ¶ 4).

Google is an important Wackenhut customer in Atlanta. (Turner Decl. at ¶ 5). In fact, Wackenhut has guards on assignment at Google twenty-four hours a day (in first, second and third shifts), seven days a week. (Id. at ¶ 7). During any given shift, approximately 16 to 21 Wackenhut guards are patrolling Google's facility and monitoring different security posts. (Turner Decl. at ¶ 7; Pl. Dep. at 93). Google has entrusted Wackenhut to provide security services to minimize the risk that confidential and proprietary Google information is stolen. (Turner Decl. at ¶ 8; Pl. Dep. at 93-95, 98). To

support those security efforts, Google and Wackenhut have adopted unambiguous policies which prohibit Wackenhut security guards from sleeping during their scheduled shifts. (Turner Decl. at ¶ 8; Pl. Dep. at 61-62). If a Wackenhut guard is caught sleeping during his or her shift, Wackenhut takes disciplinary action against the guard, which could include ending the guard's assignment or terminating the guards' employment. (Turner Decl. at ¶ 8; Pl. Dep. at 61-62).

In 2006, Wackenhut employee Jennifer Turner (who is an African-American and who is 45 years of age) served as the Site Security Manager at Google. (Turner Decl. at ¶¶ 5, 16). In that position, she worked onsite at Google and supervised the Wackenhut guards on assignment there. (Id. at ¶ 5). In 2006, Turner was supervised by Carlos Garcia, who was Wackenhut's Account Manager over the Google account. (Turner Decl. at ¶ 6; Declaration of Carlos Garcia ("Garcia Decl.") at ¶ 2, attached hereto as Exhibit C). Garcia is Hispanic and is 46 years of age. (Garcia Decl. at ¶ 8). In 2006, J.E. Penifold was employed with Google as the Facility Manager at Google's Atlanta facility. (Turner Decl. at ¶ 6). If Google had questions or concerns about a Wackenhut guard, Penifold addressed those issues with Turner. (Id.).

## II. PLAINTIFF'S EMPLOYMENT WITH WACKENHUT

In February 2003, Plaintiff began his employment with Wackenhut as a security guard. (Pl. Dep. Exh. 4). Plaintiff was 61 years of age when he was hired. (Pl. Dep. at 29). After working on guarding assignments for two other Wackenhut customers, Plaintiff began

a guarding assignment at Google in December 2005. (Pl. Dep. at 85). Plaintiff was supervised by Jennifer Turner. (Turner Decl. at ¶ 9; Pl. Dep. at 85).

On July 21, 2006, Penifold personally observed Plaintiff sleeping while on duty. (Pl. Dep. Exh. 12). As a result, Penifold sent an email to Turner which stated:

> Today at approximately 1645 hrs I was investigating potential loss of power in the facility and walking the south wall looking for EGEN status. During my transit east through the south corridor at the end of the transportation aisle, near post 10, I observed SO Jones asleep at his post in the chair. I went outside of the building to check my EGEN units; on my subsequent re-entry to the building I again past post 10 where SO Jones was still asleep.
>
> We cannot tolerate this type of activity as our business nature is one of utmost security. A single event of this nature could compromise trade secrets by allowing our competition to view our activities. I favor our relationship with Wackenhut . . . and know this is not the standard of service normally provided to us.
>
> Please handle this matter expeditiously.

(Pl. Dep. Exh. 12; Turner Decl. at ¶ 10). Plaintiff admits that Penifold complained to Wackenhut about him and that Penifold sent Turner an email about the incident. (Pl. Dep. at 102). Plaintiff, however, disputes Penifold's statement that he was sleeping. (Id. at 157).

After receiving Penifold's complaint, Turner forwarded the email to her supervisor (Carlos Garcia) and to Donnie Hixon, who was Wackenhut's Operations Manager in 2006. (Turner Decl. at ¶ 11; Garcia Decl. at ¶ 3). Plaintiff did not work any more shifts at Google after July 21, 2006. (Pl. Dep. at 117-118).

Based on Wackenhut's receipt of Penifold's complaint about Jones and on Wackenhut's policy which prohibits guards from sleeping on the job, Garcia, Turner and Penifold decided to end Plaintiff's assignment at Google.[1] (Garcia Decl. at ¶ 4; Turner Decl. at ¶ 12). Rather than discharging Plaintiff, on July 25, 2006, Wackenhut issued a "Final Warning" to him which warned that "future related violations will result in progressive disciplinary action, up to and including dismissal." (Pl. Dep. Exh. 11; Garcia Decl. at ¶ 5; Pl. Dep. at 103). In deposition, Plaintiff admitted that he does not know what role Wackenhut management played in making the decision to end his Google assignment or what factors were considered as part of that process. (Pl. Dep. at 121-123, 153).

Also on July 25, 2006, Garcia offered Plaintiff three alternative guarding assignments with other Wackenhut customers – Quaker Oats, Yamaha, and General Electric ("GE"). (Garcia Decl. at ¶ 6; Pl. Dep. Exhs. 17, 18, 19; Pl. Dep. at 155). Plaintiff accepted the GE offer, and he began that assignment on July 26, 2006. (Pl. Dep. at 156). Just days later, on August 8, 2006, Plaintiff submitted a letter of resignation to Wackenhut. (Pl. Dep. at 159; Pl. Dep. Exh. 20). Plaintiff does not allege that he was subjected to any discrimination or retaliation during his GE assignment. (Pl. Dep. at 177-178).

---

[1] Plaintiff's replacement at Google was Charlie Griffin, an African-American. (Turner Decl. at ¶ 13; Pl. Dep. at 118).

## III.  PLAINTIFF'S CLAIMS OF DISCRIMINATION AND RETALIATION

On May 16, June 14, and July 24, 2006, Plaintiff filed EEOC charges against Wackenhut. (Pl. Dep. Exhs. 21, 23, 25). Plaintiff did not allege race discrimination in any of those charges. (Pl. Dep. at 165, 172-173, 178). On December 11, 2006, Plaintiff received a right-to-sue notice from the EEOC. (Pl. Dep. at 207; Complaint at ¶ 11). Ninety-one days later, on March 12, 2007, Plaintiff filed the instant action.

Plaintiff alleges that Wackenhut discriminated against him by suspending him from his Google assignment and ending that assignment. (Pl. Dep. at 134-136, 145-147). He also contends that Wackenhut retaliated against him in response to his EEOC charges by: (1) suspending him from his Google assignment and ending that assignment, (2) forcing him to resign, and (3) deducting $137.62 from his pay checks. (Pl. Dep. at 79, 180, 188).

Plaintiff has conceded that his claims are supported by nothing more than his personal beliefs. (Pl. Dep. at 121-122). Other than those personal beliefs, Plaintiff has failed to offer any evidence that Wackenhut discriminated or retaliated against him.

## IV.  PLAINTIFF'S PROPENSITY FOR CLAIMING DISCRIMINATION

Plaintiff appears to assert discrimination claims against all of his employers. In fact, he admitted filing EEOC charges against the only four employers with whom he has been employed on a full-time basis since moving from New York to Georgia. (Pl. Dep. at 28). In describing Georgia employers, Plaintiff said that "the state of Georgia is a very racist state," that "southern whites they just have their own way," and that Georgia companies

"have a very poor opinion towards blacks." (Id. at 26-28). It is possible that Plaintiff has filed similar frivolous discrimination charges against his previous employers in New York, but he refused to discuss that issue during his deposition. (Id. at 28-29, 40).[2]

## ARGUMENT AND CITATION OF AUTHORITY

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Chapman v. A1 Transp., 229 F.3d 1012, 1026 (11th Cir. 2000). Application of this standard to this instant case demonstrates that summary judgment is appropriate on all of Plaintiff's claims.

### II.   PLAINTIFF FAILED TO EXHAUST THE ADMINISTRATIVE PREREQUISITES FOR HIS RACE DISCRIMINATION CLAIM

Plaintiff's race discrimination claim should be dismissed because Plaintiff failed to exhaust the administrative prerequisites for asserting that claim. As a jurisdictional prerequisite to asserting a discrimination claim under Title VII, a plaintiff must exhaust his administrative remedies by first filing a charge of discrimination with the EEOC within 180

---

[2]  Plaintiff stubbornly refused to discuss several relevant topics during his deposition. For example, he refused to provide Wackenhut with the names of his witnesses. (Id. at 212-213). When defense counsel reminded him that the Court has issued an Order compelling him to disclose the names of his witnesses, Plaintiff responded that "I'm not going to comply with anything with [Judge Cooper]," that "Judge Cooper, to me, is not a judge, much of a judge," and that "Judge Cooper is not going to be the judge." (Id. at 213-214).

days of the unlawful act. 42 U.S.C. § 2000e-5(e). A plaintiff may not normally bring a Title VII action based upon claims that were not asserted in his EEOC charge. See Butler v. Matsushita Commun. Indus. Corp., 203 F.R.D. 575, 580 (N.D. Ga. 2001) (dismissing various of plaintiffs' discrimination claims because they exceeded scope of EEOC charges). The substance of a plaintiff's discrimination lawsuit is limited to the scope of the EEOC investigation which could reasonably be expected to grow out of the EEOC charge. See Buffington v. General Time Corp., 677 F. Supp. 1186, 1192 (M.D. Ga. 1988) (dismissing claims not reasonably related to the allegations contained in the plaintiff's EEOC charge).

In his Complaint, Plaintiff claims that Wackenhut discriminated against him based on his race. (Complaint at ¶ 6). In his EEOC charges, however, Plaintiff failed to include an allegation of race discrimination. (Pl. Dep. Exhs. 21, 23, 25). Plaintiff admits that he did not assert a race discrimination claim in his EEOC charges. (Pl. Dep. at 165, 172-173, 178). Because Plaintiff failed to exhaust the prerequisites for his race claim, Wackenhut is entitled to summary judgment on that claim. See Butler, 203 F.R.D. at 580 (dismissing various discrimination claims because they exceeded scope of EEOC charges).

## III. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO FILE SUIT WITHIN 90 DAYS AFTER RECEIVING A RIGHT-TO-SUE NOTICE FROM THE EEOC

Title VII requires that a complaint be filed within 90 days after the plaintiff's receipt of an EEOC right-to-sue notice. See 42 U.S.C. § 2000e-5(f)(1). Here, Plaintiff's Complaint should be dismissed because Plaintiff failed to file it within 90 days after receiving the

EEOC right-to-sue letter. In his Complaint, Plaintiff pleads that he received the EEOC's right-to-sue notice on December 11, 2006. (Plaintiff's Complaint at ¶ 11). Confirming that fact, during his deposition, Plaintiff testified that he received the right-to-sue letter on December 11, 2006. (Pl. Dep. at 207). Fatal to his claims, Plaintiff waited 91 days – until March 12, 2007 – to file the instant action. Because the Complaint was filed 91 days after Plaintiff's receipt of the right-to-sue letter, Plaintiff has failed to comply with 42 U.S.C. § 2000e-5(f)(1), and his Complaint should be dismissed in its entirety.

## IV. PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED UNDER THE <u>MCDONNELL DOUGLAS</u> FRAMEWORK

Plaintiff contends that Wackenhut discriminated against him based on his race and age by allegedly suspending him from his Google assignment and ending that assignment.[3] (Pl. Dep. at 134-136, 145-147). In discrimination cases such as this, courts follow the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish, by a preponderance of the evidence, a <u>prima facie</u> case of discrimination. <u>See</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). If the plaintiff succeeds, the burden then shifts to the

---

[3] Wackenhut's position is that these two acts of alleged discrimination are one in the same. It is undisputed that July 21, 2006 was the last day that Plaintiff worked on assignment at Google. (Pl. Dep. at 117). Regardless of whether the alleged suspension and the ending of Plaintiff's Google assignment constitute separate adverse actions, the same legitimate, non-discriminatory reason applies – Garcia, Turner and Penifold made the decision after Penifold complained that Plaintiff was sleeping at his security post.

employer to articulate one or more legitimate, non-discriminatory reasons for its employment decision. Chapman, 229 F.3d at 1024. Once the defendant satisfies this burden, any presumption of discrimination arising out of the prima facie case "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-511 (1993). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Here, Plaintiff cannot satisfy his burden under the McDonnell Douglas framework because he cannot establish a prima facie case of discrimination and because he cannot show that Wackenhut's actions were pretextual. Rather, the undisputed evidence shows that Plaintiff was not allowed to return to his guarding assignment at Google after Wackenhut received a complaint from Google that he was sleeping while on duty.

## A.     **Plaintiff Cannot Establish A Prima Facie Case Of Discrimination.**

The Court should grant Wackenhut's dispositive motion because Plaintiff cannot satisfy his burden of demonstrating a prima facie case of race and age discrimination. To establish a prima facie case of discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his protected class more favorably than him; and (4) he was qualified for his position. Holifield v. Reno, 115 F.3d 1555, 1562

(11th Cir. 1997); <u>Knight v. Baptist Hosp. of Miami</u>, 330 F.3d 1313, 1316 (11th Cir. 2003).

Plaintiff fails to satisfy the third and fourth prongs of the test.

### 1. Plaintiff cannot establish that Wackenhut treated comparators outside of his protected classes more favorably than him.

As for the third <u>prima facie</u> prong, Plaintiff must show that he was treated less favorably than other employees who were "similarly situated" to him in all relevant respects. <u>Holifield</u>, 115 F.3d at 1562. To make such a determination, consideration must be given to "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." <u>Id.</u> A claim of discriminatory discipline requires a showing that the misconduct for which the plaintiff was disciplined was "nearly identical" to that engaged in by an employee outside the plaintiff's protected class and that the plaintiff was treated in a less favorable manner. <u>Jones v. Winn-Dixie Stores, Inc.</u>, 75 F. Supp.2d 1357, 1364 (S.D. Fla. 1999).

Here, it is undisputed that Plaintiff cannot identify any white employees or any employees below the age of 40 who engaged in misconduct similar to his and who were treated more favorably than him. Plaintiff's Google assignment was ended after Wackenhut received a complaint from Google management that Plaintiff was sleeping at his security post. (Garcia Decl. at ¶ 3). Plaintiff admittedly <u>cannot identify</u> any comparators about whom Google complained to Wackenhut for sleeping on the job. (Pl. Dep. at 151). Given these facts, the record reflects that Plaintiff has failed to offer any comparator evidence and

thus that he cannot establish the third prima facie prong. See Jones, 75 F. Supp.2d at 1364-65 (dismissing discrimination claim where plaintiff failed to prove that a comparator received more favorable treatment); Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) (same); Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311-1312 (same).

> **2.    Plaintiff cannot prove that he was qualified for his Google position.**

Plaintiff cannot establish the fourth prima facie element for his discrimination claims because he cannot show that he was qualified for his former position. To show that he was qualified for a position, a plaintiff must prove that he was performing his "job at a level which met [his] employer's legitimate expectations." Vickers v. Federal Express Corp., 132 F. Supp.2d 1371, 1379 (M.D. Fla. 2000). In determining whether an employee was qualified for the job, courts should examine the employee's actual performance. See Silverstein v. Mertoplex Communications, Inc., 678 F. Supp. 863, 868 (S.D. Fla. 1988) (dismissing discrimination claim because plaintiff failed to establish that she was qualified for her former position). A plaintiff "does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors." Meadows v. Ford Motor Co., 21 Fed. Appx. 302, 304 (6th Cir. 2001).

Here, Jennifer Turner testified that Google was dissatisfied with Plaintiff's performance at his guarding assignment, as evidenced by an email sent from Google Facility Manager J.E. Penifold. (Turner Decl. at ¶ 10; Pl. Dep. Exh. 12). Likewise, Account Manager Carlos Garcia testified that in accordance with established Wackenhut

policy, he, Turner and Penifold made the decision to end Plaintiff's guarding assignment

based on Wackenhut's receipt of a complaint from Penifold that Plaintiff was sleeping on

the job. (Garcia Decl. at ¶ 4). Based on this undisputed record evidence, Plaintiff is unable

to demonstrate that he was qualified for the Google assignment. See Silverstein, 678 F.

Supp. at 868-869 (plaintiff failed to establish prima facie case because she could not prove

that she was qualified for her former position). Accordingly, Plaintiff's discrimination

claims fail.

**B.** **Wackenhut Has Articulated A Legitimate, Non-discriminatory Reason For The Challenged Employment Decisions.**

Assuming, arguendo, that Plaintiff had satisfied his burden of establishing a prima

facie case for his discrimination claims, Wackenhut had a legitimate, non-discriminatory

reason for the challenged decisions, namely that a customer complained that Plaintiff was

sleeping on the job. (Pl. Dep. at 102, 124; Turner Decl. at ¶ 10). Based on this evidence,

Wackenhut has satisfied its requirement of articulating a legitimate, non-discriminatory

reason for its actions. Jackson v. Citiwide Corp. Transp., 2004 U.S. Dist. LEXIS 2279, *11

(S.D.N.Y. February 17, 2004) (discharge of plaintiff based on employer's receipt of

customer complaints about plaintiff constituted legitimate, non-discriminatory reason); see

also Dula v. Eastman Kodak Co., 1980 U.S. Dist. LEXIS 17108, *4 (M.D. Fla. August 29,

1980) (employer's receipt of customer complaints regarding plaintiff qualified as legitimate,

non-discriminatory reason supporting plaintiff's discharge); Gallaspy v. Raytheon Tech.

Servs. Co., 2005 U.S. Dist. LEXIS 16342, *10 (W.D. Tex. August 9, 2005) (holding that

removal of plaintiff from customer account at the customer's request constituted legitimate,

non-discriminatory reason for the challenged employment decision).[4]

### C. Plaintiff Cannot Point To Any Evidence Of Pretext.

Because Plaintiff cannot overcome Wackenhut's legitimate, non-discriminatory

reason, his discrimination claims fail. To rebut Wackenhut's explanation, Plaintiff must

offer probative evidence that the reason articulated by Wackenhut for the challenged

employment decisions is pretextual and that the real reason is discrimination. St. Mary's

Honor Ctr., 509 U.S. at 518-519. However, Plaintiff has not offered any evidence of

pretext. He admitted that he does not know what role Wackenhut management played in

making the decision to end his Google assignment or what factors were considered as part

of that process. (Pl. Dep. at 121-123, 153). On the other hand, Wackenhut's witnesses

testified that Plaintiff's race and age were not considered during that process. (Garcia Decl.

at ¶ 4; Turner Decl. at ¶ 14). Because Plaintiff admits that he does not know what factors

Wackenhut considered in making the decision to end his Google assignment, Wackenhut's

evidence concerning that decision is undisputed. Consequently, Plaintiff cannot

demonstrate pretext and Wackenhut is entitled to judgment as a matter of law.

---

[4] The unpublished cases cited by Wackenhut are attached hereto as Exhibit D.

Not only has Plaintiff admitted that he cannot show pretext, but the evidence also plainly demonstrates that the challenged employment decisions were based on a legitimate, non-discriminatory reason – Google's complaint to Wackenhut that Plaintiff was sleeping on the job. (Pl. Dep. Exh. 12; Garcia Decl. at ¶ 4; Turner Decl. at ¶ 10). Because Wackenhut's business is premised on providing exceptional customer service, if a customer instructs Wackenhut to end a guard's assignment for legitimate reasons, Wackenhut complies with the customer's request. (Garcia Decl. at ¶ 7). Here, Google Facility Manager J.E. Penifold complained to Wackenhut that he had personally observed Plaintiff sleeping on duty. (Pl. Dep. at 102; Pl. Dep. Exh. 12; Turner Decl. at ¶ 10). Although Plaintiff disputes that he was sleeping on the job, he does not (and cannot) dispute that Wackenhut received the complaint from Google and that Wackenhut based its decision on that complaint. (Pl. Dep. at 102, 124). Given the complaint from Google, the undisputed facts show that Wackenhut had a good faith belief that Plaintiff's job performance was unacceptable and thus that the ending of his assignment was proper. See EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (in an employment context, a decision-maker's good faith belief is the relevant inquiry).

Moreover, several additional facts confirm Plaintiff's inability to establish pretext. First, Plaintiff admits that no Wackenhut employees made any discriminatory comments to him. (Pl. Dep. at 138-139, 147-148). Second, Plaintiff acknowledges that one of the Wackenhut decision-makers, Carlos Garcia, actually placed him on another assignment

after his Google assignment had ended, as opposed to discharging him. (Pl. Dep. at 151-152). This action alone undermines Plaintiff's case. Third, Plaintiff concedes that Wackenhut has a policy prohibiting guards from sleeping on duty and that Wackenhut disciplines guards who violate that policy. (Id. at 61-62). Fourth, relevant to his race claim, Plaintiff was replaced by an African-American. (Turner Decl. at ¶ 13). Fifth, relevant to his age claim, Plaintiff was 61 years of age when he was hired, and the decision-makers themselves are above the age of 40. (Pl. Dep. at 29; Turner Decl. at ¶ 16; Garcia Decl. at ¶ 8). Sixth, Plaintiff has not offered any evidence that Wackenhut discriminated against other African-American employees or employees age 40 and above.[5] Based on these facts, Plaintiff cannot satisfy his burden of demonstrating pretext.

At best, Plaintiff is left to argue that Wackenhut was mistaken when it acted upon Google's complaint regarding his performance by ending his assignment. However, it is well-settled that if an employer mistakenly but honestly concludes that an employee violated a policy, acting upon that conclusion does not give rise to a discriminatory motive. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989) ("[t]he law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an

---

[5] With his age claim, Plaintiff asserts that Wackenhut was "getting rid of" all guards above the age of 40 on assignment at Google and replacing them with "younger people 30 and under." (Pl. Dep. at 145). Plaintiff, however, failed to identify any guards above the age of 40 were removed from Google and likewise failed to identify any guards below the age of 40 who were placed on assignment there. (Id. at 145-146).

employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation"); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) (holding that an employer cannot be held liable for discharging an employee "under the mistaken but honest impression that the employee violated a work rule"); Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991) (noting that even an incorrect conclusion that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason). Following this authority, Wackenhut was entitled to conclude that Google's complaint regarding Plaintiff was a legitimate reason for Wackenhut's actions. See Jones, 137 F.3d at 1311, 1312 (stating "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules").

Even if Plaintiff could cast doubt on the reason for the ending of his Google assignment, his discrimination claims fail because he has offered no evidence that his race or his age were the reasons for the challenged decisions. Reeves, 530 U.S. at 146-147 (noting that a plaintiff must do more than prove that the employer's reason for discharge is false by presenting evidence of intentional discrimination). "It is well-settled that an employer may fire an employee for a good reason, a bad reason, reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Dodd v. Singer Co., 669 F.Supp. 1079, 1085 (N.D. Ga. 1987). Courts are not in the business of adjudging whether employment decisions are prudent or fair. Chapman, 229 F.3d at 1030.

Instead, courts are to be concerned only with the question of whether discriminatory animus motivated a challenged employment decision. <u>Damon</u>, 196 F.3d at 1361. Plaintiff's skeletal assertion that Wackenhut discriminated against him (for which Plaintiff has offered no supporting evidence) reflects merely a strained attempt to second guess Wackenhut's decision about managing Plaintiff, its client relationships, and its business – a result not permitted by law. <u>Elrod v. Sears, Roebuck</u>, 939 F.2d 1466 (11th Cir. 1991).

Given these facts, Plaintiff has no basis for challenging Wackenhut's decision to end his Google assignment aside from his own subjective beliefs that the decision was discriminatory. Indeed, Plaintiff has admitted that his only evidence in this case consists of his personal beliefs about discrimination. (Pl. Dep. at 121-122). Plaintiff's subjective and unsupported beliefs, however, are irrelevant and do not establish pretext. <u>Elrod</u>, 939 F.2d at 1471. Thus, the Court should reject Plaintiff's attempt to substitute his business judgment for Wackenhut's and should find that Plaintiff cannot demonstrate pretext.

## III.   WACKENHUT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

Plaintiff contends that he was retaliated against in response to his EEOC filings. Specifically, Plaintiff alleges that Wackenhut retaliated against him by: (1) suspending him from his Google assignment and ending that assignment, (2) forcing him to resign, and (3) deducting a total of $137.62 from his pay checks. (Pl. Dep. at 79, 180, 188). To establish a <u>prima facie</u> case of retaliation, a plaintiff must show that: (1) he engaged in a protected

activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. <u>Stavropoulos v. Firestone</u>, 361 F.3d 610, 616 (11th Cir. 2004). As shown below, Plaintiff's retaliation claim fails.

A.    <u>**Plaintiff Cannot Establish That He Was Suspended Or That His Google Assignment Was Ended In A Retaliatory Manner.**</u>

Regarding his belief that he was suspended in a retaliatory manner and that his Google assignment was ended in a retaliatory manner, Plaintiff cannot establish the third <u>prima facie</u> element. Specifically, Plaintiff cannot prove any causal connection between his alleged suspension and removal from the Google assignment and his filing of EEOC charges. To establish a causal link, a plaintiff must show that the protected activity and the adverse action are not unrelated. <u>See</u> <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001) (affirming dismissal of retaliation claim because plaintiff failed to prove causal connection element). Here, the undisputed evidence reveals that Plaintiff's filings with the EEOC and the ending of his Google assignment are entirely unrelated. First, as Plaintiff concedes, no Wackenhut employee ever told him that he would be discharged for filing EEOC charges. (Pl. Dep. at 161-162). Second, Plaintiff testified that one of the Wackenhut decision-makers (Carlos Garcia) did not retaliate against him. (<u>Id.</u> at 196). Third, Plaintiff has failed to offer any evidence that Garcia or Turner even had knowledge of his EEOC charges. Fourth, Garcia and Turner unambiguously testified that they did not consider Plaintiff's EEOC filings when making the decision to end Plaintiff's Google

assignment. (Garcia Decl. at ¶ 4; Turner Decl. at ¶ 14). Rather, Turner, Garcia and

Penifold made the decision to end Plaintiff's Google assignment based upon Penifold's

complaint that Plaintiff was sleeping at his security post. (Garcia Decl. at ¶ 4; Turner Decl.

at ¶ 12). Garcia and Turner believed that Wackenhut's relationship with Google would be

negatively impacted if they allowed Plaintiff to remain on assignment at Google, especially

considering Penifold's instruction (in the July 21 email to Jennifer Turner) to "handle this

matter expeditiously." (Garcia Decl. at ¶ 7; Pl. Dep. Exh. 12). Their decision was in

accordance with Wackenhut's established policy which prohibits guards from sleeping on

the job. (Garcia Decl. at ¶ 4; Turner Decl. at ¶ 8). Fifth, Plaintiff concedes that Wackenhut

had not even received his latest EEOC charge when his Google assignment was ended. (Pl.

Dep. at 162). Based on these facts, Plaintiff cannot offer any evidence showing a casual

connection between his EEOC charges and the ending of his Google assignment, precluding

him from satisfying the third prima facie prong. See Ellis v. Morehouse Sch. of Med., 925

F. Supp. 1529, 1550 (N.D. Ga. 1996) (dismissing retaliation claim because plaintiff failed to

prove causal connection element). Accordingly, Wackenhut is entitled to summary

judgment on this retaliation claim.

## B.   Plaintiff Cannot Establish That He Was Forced To Resign.

With perhaps his most absurd claim, Plaintiff contends that Wackenhut forced him to

resign his employment in retaliation for filing his EEOC charges. (Pl. Dep. at 79). Plaintiff,

however, cannot establish the second or third prima facie elements for this claim.

### 1.  Plaintiff cannot show that his resignation was an adverse employment action caused by Wackenhut.

Plaintiff contends that Wackenhut subjected him to an adverse action by forcing him to resign his employment on August 8, 2006. (Pl. Dep. at 158-159; Pl. Dep. Exh. 20).  He speculates that Wackenhut would have discharged him within a few weeks after it received his EEOC charge dated July 24, 2006, and thus that he needed to resign first.  (Pl. Dep. at 158-160).  Plaintiff, however, admitted that no one ever told him he would be discharged for filing a third EEOC charge.  (Pl. Dep. at 161-162).  Moreover, his resignation letter made no mention of supposed retaliation.  (Pl. Dep. Exh. 20).  Further, Plaintiff admitted that Wackenhut had not even received the EEOC charge in question when he resigned.  (Pl. Dep. at 162).  Plaintiff has failed to explain how Wackenhut could have possibly "forced him off the job" for filing an EEOC charge which it had not yet received.

Wackenhut's actions serve as further proof that Plaintiff was not forced to resign. Indeed, Carlos Garcia (one of the decision-makers who ended Plaintiff's Google assignment) offered Plaintiff an alternative assignment at GE on July 25, 2006.  (Pl. Dep. at 155; Pl. Dep. Exh. 19).  Plaintiff admitted that he was not subjected to any alleged retaliation during his GE assignment, which he began approximately two weeks before he resigned.  (Pl. Dep. at 177-178).  This undisputed record evidence demonstrates that Wackenhut did not subject Plaintiff to an adverse action by forcing him to resign.

To support his belief that he was going to be retaliated against, Plaintiff argues that the "Final Warning" issued to him following the July 21 sleeping incident indicates that he would be discharged if he filed another EEOC charge. (Pl. Dep. at 160-161). When asked to identify the retaliatory language in the "Final Warning," Plaintiff testified that it "doesn't say exactly that I will be fired if I filed another EEOC charge. It says final warning, meaning that if I was going to go ahead and file another charge they was going to fire me." (Id.). Plaintiff's logic is flawed. Contrary to Plaintiff's absurd suggestion, a plain review of the "Final Warning" reveals no retaliatory language. Rather, it states that "future related violations will result in progressive disciplinary action, up to and including dismissal." (Pl. Dep. Exh. 11). Given these facts, Plaintiff cannot establish that Wackenhut subjected him to an adverse action in response to his third EEOC charge.

> **2.  Plaintiff cannot establish a causal connection between his EEOC filings and his resignation.**

Plaintiff also cannot establish the third prima facie element for his claim that Wackenhut retaliated against him by forcing him to resign. He claims that he would have been "fired if [he] filed another EEOC charge," but he concedes that he resigned before Wackenhut even received the EEOC charge in question. (Pl. Dep. at 161-162). Because the alleged adverse action (Plaintiff's voluntary resignation) occurred before Wackenhut became aware of the protected activity (Plaintiff's third EEOC charge), Plaintiff is precluded from establishing the requisite causal connection. Other than his personal beliefs

and conjecture, Plaintiff has failed to offer any evidence establishing a causal connection

between his voluntary resignation and the filing of his last EEOC charge. For these reasons,

Wackenhut is entitled to summary judgment on Plaintiff's retaliation claim.[6]

### C.     Plaintiff Cannot Prove That He Was Paid In A Retaliatory Manner.

Lastly, Plaintiff contends that Wackenhut retaliated against him by deducting $91.65

from his June 9, 2006, paycheck and $45.97 from his July 21, 2006, paycheck. (Pl. Dep. at

176, 178-180; Pl. Dep. Exh. 24). Plaintiff speculates that those payroll deductions were

made in response to his EEOC filings. Plaintiff, however, cannot satisfy the third prima

facie prong because he has failed to establish a causal connection between Wackenhut's

payroll practices and the filing of his EEOC charges. Plaintiff has offered no evidence

proving that the Wackenhut payroll department made those deductions in response to his

EEOC filings, no evidence regarding when Wackenhut decided to process the two payroll

deductions in dispute, and no evidence that the Wackenhut employee responsible for

processing his paychecks had any knowledge of his EEOC charges. He conducted no

discovery on these issues. Because Plaintiff has failed to present any evidence that

---

[6] To the extent Plaintiff alleges that he was constructively discharged, such a claim would
fail as a matter of law because he has not offered any evidence that Wackenhut subjected
him to "working conditions that are so intolerable that a reasonable person in [his] position
would have been compelled to resign." Nettles v. NSG Sky Chefs, 211 Fed. Appx. 837
(11th Cir. 2006) (affirming dismissal of constructive discharge claim). Rather, Plaintiff
admitted that he was not subjected to any alleged discrimination or retaliation during the
final weeks of his employment. (Pl. Dep. at 177-178).

Wackenhut's payroll practices were made in response to his EEOC filings, his retaliation claim fails as a matter of law. See Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1355 (11th Cir. 1999) (dismissing retaliation claim because no causal connection existed between plaintiff's protected activity and the adverse action).

Respectfully submitted this 28th day of February, 2008.

DUANE MORRIS LLP

s/ Terry P. Finnerty
Terry P. Finnerty
Georgia Bar No. 261561
James P. Ferguson, Jr.
Georgia Bar No. 258743

1180 West Peachtree Street
Suite 700
Atlanta, Georgia 30309
(404) 253-6900 (telephone)
(404) 253-6901 (facsimile)

Counsel for Defendant
The Wackenhut Corporation

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that this filing complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia. Counsel hereby states that this filing has been typed in Times New Roman 14 font.

s/ Terry P. Finnerty
Terry P. Finnerty

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONALD JONES,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )     Case No: 1:07-CV-0567-CC-RGV
                                 )
WACKENHUT % GOOGLE INC.,         )
                                 )
        Defendant.               )

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2008, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THE WACKENHUT CORPORATION'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system.

I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

> Donald Jones
> P.O. Box 261
> Red Oak, Georgia  30272

> s/ Terry P. Finnerty
> Terry P. Finnerty
> Georgia Bar No. 261561
>
> Counsel for Defendant
> The Wackenhut Corporation