# EXHIBIT B
# PART V

Jones v. Wackenhut &#38;#38; Google Inc.     Doc. 76 Att. 7

Dockets.Justia.com

1     Q    Is there a suite number?

2     A    470.

3     Q    And what is your job title there?

4     A    Security.

5     Q    Has that $9 per hour, has that been your rate

6 of pay since you started there?

7     A    No.

8     Q    What did you start --

9     A    I started there as the utility officer.  It was

10 11.50.

11     Q    So it was higher up front?

12     A    Uh-huh.

13     Q    And why did it go from 11.50 to 9?

14     A    The utility officers wasn't getting 40 hours a

15 week.

16     Q    Was that -- was that a rover position?

17     A    Yeah.

18     Q    How many hours a week do you work at Thorpe

19 now?

20     A    40.

21     Q    How many hours a week were you working as a

22 rover?

23     A    It averaged.  Sometimes it was 25.  Sometimes

24 it was 35, you know.

25     Q    And if you started there in November of 2006,

1    how long did you work as a rover?

2         A    Oh, about six months.

3         Q    And since then you've been working the $9 an

4    hour --

5         A    Right.

6         Q    Is -- well, I think I know the answer.  Thorpe

7    is not the only place you've been employed since leaving

8    Wackenhut; right?

9         A    No.

10        Q    KSI was also an employer?

11        A    Yes.

12        Q    What were your dates of employment with KSI?

13        A    Oh, I don't know.  It was about five months.

14        Q    So I think you testified that you started there

15   two weeks or so after you left Wackenhut?

16        A    Right.  That's correct.

17        Q    And you worked there for five or so months

18   before you started --

19        A    So 2006 and say somewhere around September.

20        Q    Of -- you started --

21        A    Or say November.

22        Q    Is when you ended at KSI?

23        A    Around about that time, yeah.

24        Q    But you were only unemployed for roughly two

25   weeks after leaving Wackenhut?

1    A    About that.

2    Q    Who was your supervisor at KSI?

3    A    That's the one that I gave you.

4    Q    Oh, that's right.

5    A    Yeah, same one.

6    Q    And we also looked at -- that was a Piedmont

7    address?

8    A    Right.

9    Q    What was your rate of pay there?

10    A    I think it was $10 an hour.

11    Q    And that was the same rate of pay as Wackenhut;

12    right?

13    A    Well, Wackenhut, they pay you according to what

14    post you're at.

15    Q    Okay.  Well, the $10 an hour was the same that

16    you were making at Google?

17    A    Right.

18    Q    Was the $10 an hour at KSI, was that your rate

19    of pay the whole time?

20    A    That's correct.

21    Q    How many hours a week were you working at KSI?

22    A    About 40.

23    Q    And we've covered a lot today.  The KSI

24    employment ended -- was that the wrongful termination

25    that you testified about earlier?

1     A     That's correct.

2     Q     So you left that job because they -- they fired

3 you in a manner in which you believe was wrongful?

4     A     That's correct. Well, actually, they didn't

5 fire me. They just said that they didn't have any work

6 for me.

7     Q     Okay. So they let you go?

8     A     Right.

9     Q     Are there any -- other than KSI and Thorpe, are

10 there any other places that you've worked since leaving

11 Wackenhut?

12     A     No, that's it.

13     Q     During that two weeks when you -- after you

14 left Wackenhut and before you started at KSI, did you

15 make any efforts to get employment during that time?

16     A     Sure, I was looking for a position.

17     Q     Did you maintain any records of your job search

18 during that time?

19     A     No.

20     Q     Did you send out your resume during that time?

21     A     No, I just carried mines with me.

22     Q     Did you have any interviews during that time?

23     A     Yes, several places.

24     Q     Where at?

25     A     Oh, I couldn't tell you where. That's been too

1    long ago.  That's two years, three years.

2        Q    Did you have any job offers during that two

3    weeks?

4        A    No.  Naturally, if I'm unemployed, I'm going to

5    take the first one that I get.

6        Q    So the first job offer you got was with KSI?

7        A    Right.

8        Q    Have you had any other sources of income since

9    you resigned from Wackenhut?

10       A    No, that's it.

11       Q    Everybody doing okay?  Does anybody need a

12   break?

13            All right.  Let's mark --

14       (Defendant's Exhibits Nos. 27 and 28 were marked.)

15   BY MR. FERGUSON:

16       Q    Now, Mr. Jones, I've handed you what we've

17   marked as Exhibits 27 and 28.  Have you seen these

18   documents before?

19       A    Yes.

20       Q    And is Exhibit 27 a copy of the Complaint that

21   you filed to initiate this lawsuit?

22       A    I believe both of them are.

23       Q    Well, I think the second one, Exhibit 28, has a

24   later date on there.  I believe that's the Amended

25   Complaint that you filed in this case, is that right,

1    Exhibit 28?

2        A    Well, there was one you said that you all --

3    you said you all didn't receive it or something or

4    other, and I refiled it.

5        Q    Well, the -- I'll show you the difference I see

6    in 27 and 28.  If you look right here on the defendant

7    line --

8        A    Uh-huh.

9        Q    -- on the first page in the caption, Exhibit 27

10   says Wackenhut percent Google, Inc., and Exhibit 28 just

11   says Google, Inc.  Do you see that?

12       A    Right.

13       Q    So Exhibit 28, did you file that just to

14   make -- just to point out to the court that you were

15   actually indeed suing Google, too?

16       A    That's correct.

17       Q    And is that the only difference between 27 and

18   28?

19       A    Should be.

20       Q    And you weren't adding any new claims with

21   Exhibit 28?

22       A    No, same thing.

23       Q    In paragraph 9 of both the Complaint and the

24   Amended Complaint, you list an address.  What is that

25   address?

1     A    Where at?

2     Q    Paragraph 9.  Right there (indicating).

3     A    That's Google.  That's where the Google

4 location at.

5     Q   Okay.  So if you could, read that address into

6 the record, please.

7     A    Aquilla Way -- 101 Aquilla Way, Austell,

8 Georgia 30168.

9     Q   So that was the location of Google's

10 building --

11     A    Right.

12     Q    -- where you were on assignment?

13     A    That's correct.

14     Q    And in paragraph -- let's see.  A couple down

15 in paragraph 11-A of both of these Complaints, you list

16 the date that you received the right to sue notice from

17 the EEOC.  Do you see that?

18     A    Right.

19     Q    What date did you receive that notice?

20     A    December 11th.

21     Q    And in your complaint on the last page, you

22 claim that you're seeking $225,000 in damages from

23 Wackenhut; is that right?

24     A    That's correct.

25     Q    How did you calculate that amount?

1    A    Nothing. I just felt that that's was -- that

2    would have been a decent amount. You know, usually,

3    with lawsuits like this, you settle what, for 70 million

4    dollars, and you usually settle it for 10. But I knew

5    that you needed, like, hospital for stress and whatnot.

6    As I said in -- in the depository [sic], I couldn't

7    afford to go to the hospital. Therefore, without those

8    type of documents, I'm not going to put 70 million

9    dollars.

10    Q    And I do want to touch on medical issues in a

11    second. But before we do that, are you seeking punitive

12    damages in this case?

13    A    Loss of money?

14    Q    Well, I view those as economic damages and

15    compensatory damages in the form of back pay or front

16    pay. Are you seeking back pay this case?

17    A    No, I wouldn't say any back -- back pay. Like,

18    the money that -- for the suspension and for the money

19    that they took, I just rounded out and put it in there

20    as all the same.

21    Q    How about punitive damages, are you seeking

22    punitive damages?

23    A    What you mean by punitive?

24    Q    Well, it's a type of damages available under

25    the law, and --

1    A    If it's legal, I'll do it, yeah.

2    Q    Well, do you claim that Wackenhut's conduct was

3  intentional and willfully wrong?

4    A    Yes.

5    Q    Have we discussed all of Wackenhut's actions

6  that you think were intentional and wrongful already?

7    A    I believe so. Outside of fighting this case

8  and denying that they didn't do any wrong.

9    Q    And other than what we've already discussed

10  today and the documents that you produced, do you have

11  any other evidence that Wackenhut's conduct was willful

12  or wrongful?

13    A    No, that's it. That's the evidence I

14  submitted.

15    Q    And other than what we've discussed today and

16  the documents that we've gone through, you don't have

17  any other evidence that Wackenhut's actions were

18  discriminatory or retaliatory; right?

19    A    Those are the evidence -- that's the evidence

20  that we have right in front of us.

21    Q    So that's right, you don't have any other

22  evidence other than what we've looked at today; right?

23    A    That's correct.

24    Q    Are you seeking emotional distress damages in

25  this case?

1      A    Well, that's what you need doctor's notes for.

2 But, of course, I -- of course, it was emotional.   But

3 like I said, I couldn't afford to go to no doctor.

4      Q    So are you seeking emotional distress damages

5 in this case?

6      A    That's one of the things that I'm looking at,

7 yes.

8      Q    How much are you seeking in emotional distress?

9      A    The entire amount is right there.   Whatever I

10 put down there.   225,000.

11      Q    225?

12      A    Right, everything is all wrapped in there.

13      Q    And do you claim that you suffered mental and

14 emotional distress as a result of Wackenhut's actions?

15      A    For all what I went through, yes.

16      Q    Who caused you that mental and emotional

17 distress?

18      A    Jennifer Turner.

19      Q    Who else?

20      A    P.E. -- what is his name?

21      Q    Penifold?

22      A    Penifold.   Godfrey.   I think more or less

23 Ms. Linda Demings, I think she just basically, like I

24 said, was more like in the office and just getting

25 involved.   I don't think that lady really meant any real

1    harm to anybody.

2        Q    And were the acts that caused you the mental

3    and emotional distress, was that the ending of the

4    Google assignment and the deductions from your

5    paychecks?

6        A    That's correct.

7        Q    Describe the mental and emotional distress that

8    you have suffered.

9        A    Well, it's -- it's -- mental distress is the

10   matter of just having these things sitting on top of

11   your mind.  I mean, you go to -- you never know what's

12   going to happen the next day you go to work.  It was

13   always something new.

14       Q    And what symptoms have you experienced?

15       A    Headaches.

16       Q    And what other symptoms?

17       A    Dizziness.

18       Q    What else?

19       A    That's it.

20       Q    How often do you -- do you experience

21   headaches?

22       A    There was times when I was experience

23   headaches -- it was just a matter of -- say, like, when

24   she walked up to me and started asking me about the 18

25   hours, and I just -- as I said, after I answer her, then

1    I left, then comes the, headache and then comes the

2    slight tendon [sic] of dizziness.  It's just when the

3    lady is behind you when you know you're being accused of

4    something.  That's -- that's when it comes.

5         Q    And after July 21st when your assignment ended,

6    did you stop experiencing the headaches and the

7    dizziness?

8         A    From them, yes.

9         Q    And after July 21st, Wackenhut didn't do

10   anything else that caused you to have a headache --

11        A    No.

12        Q    -- or caused you to become dizzy --

13        A    No.

14        Q    -- is that right?

15        A    No.

16        Q    Is that right?

17        A    That's correct.

18        Q    And I think you said you didn't seek any

19   medical treatment?

20        A    Not on a $9 a week salary -- $9 an hour salary.

21        Q    Did you take any medication for the emotional

22   distress?

23        A    No.

24        Q    And who are your witnesses in this case?

25        A    I'm not going to bring up the witness.  As I

1  said, if I can still get them, because they -- no doubt

2  they've been through a whole lot. They see the way this

3  case is going. They still going to -- even if they

4  still going to testify. Like I said, I haven't been in

5  touch with them.

6        Q    Have you spoken to anybody since --

7        A    Not -- not recently.

8        Q.   Let me finish that. Have you spoken to any of

9  your witnesses about this case recently?

10       A    No.

11       Q .  Who was the last person you spoke to about it?

12       A    One of them.

13       Q    But are you -- are you refusing to discuss the

14  names of your witnesses with me today?

15       A    That's correct. That's what I -- I asked for

16  that order of protection from, and we're going

17  through -- we went through that.

18       Q    And the Court has issued an order on that --

19       A    You mean --

20       Q    -- compelling you to provide those --

21       A    You mean Judge Cooper?

22       Q    Yes.

23       A    No, I don't pay anything -- Judge Cooper, to

24  me, is not a judge, much of a judge, and that's why I'm

25  appealing his decision.

1    Q    So are you -- so do you acknowledge that Judge

2    Cooper issued an order requiring you to provide the

3    names of the witnesses?

4    A    This case is no longer underneath Judge --

5    Judge Cooper.  This case is being -- well, it hasn't

6    been accepted in the Court of Appeals, but it is

7    being -- it is in the Court of Appeals whether or not.

8    Now, if the Court of Appeals take it, Judge Cooper is

9    not going to be the judge.  They're going to give it to

10   somebody else.

11   Q    Well, do you have -- so it sounds like you're

12   not going to comply with Judge Cooper's --

13   A    No, I'm not going to comply with anything with

14   that man.

15   Q    Well, let me finish.  So it sounds like you're

16   not going to comply with Judge Cooper's order requiring

17   you to provide us with the name of your witnesses; is

18   that right?

19   A    I asked Judge Cooper to rescue [sic] himself.

20   That's what I asked him to do, and that -- because of

21   that one -- because of his own -- his decisions, period.

22   So that's why the case is under appeal.

23   Q    Well, let me get -- I don't think I got an

24   answer to my question.  Is it your intention to not

25   comply with Judge Cooper's order on -- order compelling

1  you to provide us with the names of your witnesses?

2      A    I'm waiting for the decision from the Court of

3  Appeals.

4      Q    So is that a, yes, you're not going to

5  comply --

6      A    That's correct.

7      Q    -- with Judge Cooper's --

8      A    Because -- that's correct.

9      Q    And I think we're talking over ourselves there.

10  Am I correct that you're not going to comply with

11  Judge Cooper's order at this time?

12      A    That's correct.

13      Q    Have you produced all the documents to me that

14  you're aware of which contain information to support

15  your allegations?

16      A    Yes, everything I sent you.

17      Q    Have you obtained any written or recorded

18  statements from any witnesses?

19      A    No.  I haven't discussed it with them as of

20  yet.

21      Q    Maybe if we could take a break --

22      A    No.  No.  No.  I'm okay.  I want to get this

23  thing over with.

24      Q    Well, I understand.  But I need to -- if we

25  could take a bathroom break.

1    A    Oh.  Oh, okay.

2         (Recess from 3:05 p.m. through 3:16 p.m.)

3    BY MR. FERGUSON:

4    Q    Okay.  Mr. Jones, at this time I do not have

5    any further questions.  I do want to leave the record

6    open to explore areas that you refused to answer

7    questions about during some subsequent deposition.

8    A    You mean about the witnesses?

9    Q    The witnesses, prior EEOC charges from New

10   York --

11   A    Okay.

12   Q    -- prior employers from New York.  So to the

13   extent -- I just want to leave the record open to at

14   some point possibly come back in the future to discuss

15   those areas where you acknowledged that you would not

16   answer questions.

17   A    I don't understand what you're saying.  As far

18   as New York is concerned, I think we -- we crossed roads

19   on that when I asked you in the discovery to give me the

20   records of the employees and -- at Googles.  I asked for

21   four years.  You only gave me three years.

22   Q    Well, I think we'll just agree to disagree.

23   It's not really a -- I'm just making a statement that

24   I'm reserving the right to keep the record open to

25   possibly come back and explore --

1    A    Oh, sure.

2    Q    -- those areas --

3    A    Yeah, because it's got to -- and this is why I

4  had asked Judge Cooper to remove himself, because you

5  got to play -- you got to be -- you can't be blitz in

6  it, you know.  He's got to be even-handed.

7    Q    What do you mean?

8    A    Whatever's good for the defendant, that's good

9  for the plaintiff.  You got to be even-handed across the

10 board.

11   Q    And is it your opinion that the Judge Cooper is

12 not being even-handed?

13   A    He's way overboard.

14   Q    Why do you say that?

15   A    On -- on his decision-making.  Like when I

16 asked him to interconvene [sic], he just flatly ruled

17 out everything as far as anything that I wrote, and he

18 agreed with everything that y'all did.  Not only that,

19 but he released Google, you know.  It really sounds like

20 he's very blitz, very, enough so that -- but what I

21 don't understand is there's roomfuls that he's showing

22 that he's blitz, and he's been asked to rescue [sic]

23 himself.  And it's hard for me to understand why he

24 got -- why he's not doing it.

25   Q    Okay.  Well, and that really wasn't my point

1  for just reserving the right to keep the record open.

2      A    Oh, okay.

3      Q    So those are the questions that I have at this

4  time, and I want to thank you for coming down and

5  answering my questions today.

6      A    Oh, no problem.

7

8           (Deposition concluded at 3:18 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T E

2

3

4  G E O R G I A

5  CARROLL COUNTY:

6

7       I hereby certify that the foregoing

8  deposition was taken down, as stated in the

9  caption, and the questions and the answers thereto

10  were reduced to typewriting under my direction;

11  that the foregoing pages 1 through 218 represent a

12  true and correct transcript of the evidence given

13  upon said hearing, and I further certify that I am

14  not of kin or counsel to the parties in the case;

15  am not in the regular employ of counsel for any of

16  said parties; nor am I in any way interested in the

17  result of said case.

18      This, the 11th day of February 2008.

19

20

21



22

      MICHELLE J. FULLER, CCR-B-1991
23      My License Expires:  March 31, 2008

24

25

# E R R A T A  S H E E T

    I, the undersigned, DONALD JONES, do hereby certify
that I have read the foregoing deposition and that, to
the best of my knowledge, said deposition is true and
accurate (with the exception of the following
corrections listed below.)

PAGE    LINE           CORRECTION

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

_____ / _____   _____

                        _____

                        DONALD JONES

Sworn to and Subscribed before me

_____, Notary Public.

This _____ day of _____, 2008.
My commission Expires:

                                    MJF

# EXHIBITS TO THE DEPOSITION
# OF DONALD JONES

 

**NOTE: This application is used not only in considering you for employment, but is also kept as part of your permanent record if you are employed. Please fill it out with this in mind. All questions must be answered; if a question does not apply, so state.**

Name ___JONES_____DONALD_____
       Last       First      Middle

Home Address __3279 STACI LN__
              Street

✓__EAST POINT_____GA____30344___
     City       State      Zip

Phone Number: __404·209·7641__   Home ☒
Social Security Number __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__   Message ☐

Are you a United States Citizen?   Yes ☒   No ☐

Have you ever served in the U.S. Armed Forces?
                              Yes ☐   No ☒

   If yes, Branch of Service? _____

   Highest rank or rating?_____

   Period of active duty from _____ to _____

   Type of duty? _____

   Type of discharge?_____

Have you ever been granted a Military
or Government Security Clearance?   Yes ☐   No ☒

Have you ever been denied a Military
or Government Security Clearance?   Yes ☐   No ☒

Level of Clearance _____

Have you ever been convicted for the violation
of any law? (exclude traffic conviction where
fine was $25.00 or less)   Yes ☐   No ☒

If yes: Where?_____

   When?_____

   Conviction? _____

Do you have any physical or mental health problems, disabilities, or handicaps that will prevent you from satisfactorily performing the job(s) for which you are applying? If yes, please explain:
__No_____
_____
_____
_____

Position Applied for? __SECURITY OFFICERS__

Type of Work Desired?       Full Time ☒  Part Time ☐

If Part Time, Hour Available?_____

Salary expected? __9.00 hr__

Are you employed at present?   Yes ☒  No ☐

If so, may we contact present employer?   Yes ☒  No ☐

Do you have your own transportation?   Yes ☒  No ☐

Do you hold a current Operator's ☐ Chauffeur's ☒ License?

Have you ever been employed by Arko?   Yes ☐  No ☒

If yes: Where? _____

     When? _____

     Position? _____

     Reason for leaving? _____

Education: Circle the highest grade completed.

1 2 3 4 5 6 7 8 9 10 11 ⑫ 13 14 15 16

Did you graduate from High School?   Yes ☒  No ☐

Did you graduate from College?   Yes ☐  No ☒

If yes, Name of College _____ Degree _____

List any Military or other education __PROGRAMMING AND SYSTEMS INSTITUTE__

Name and relationship of relatives employed by Arko.
_____
_____

Name of acquaintance employed by Arko.
_____

Do you use intoxicating beverages?   Yes ☐  No ☒

If so, to what extent?_____

Do you use Drugs?   Yes ☐  No ☒

If so, to what extent?_____



## WORK HISTORY

List, beginning with your present job or last job held, all employment in the last 10 years:

| Dates (Mo. & Yr.) | Names, Address and Phone # of Employer | Type of position held / Name of Supervisor | Rate of Pay | Reason for Leaving |
|---|---|---|---|---|
| From: 11/99 To: — | Employer: R. PS Address: ATlANTA iNdusTRiAl PARK City, State, Zip: ATlANTA GA | Position: PACKAGE HANdlER Supervisor: MiKE Phone: 404-505 8458 | $ 9.50 Per | — |
| From: 11/98 To: 9/89 | Employer: US. POSTAL SERViCE Address: JAMES AFARley BldG City, State, Zip: NEW YORK NY 10189 | Position: MAiL HANdlER Supervisor: MS BROOKS Phone: 212 330 3460 | $ 850 Per | MOVE To GA |
| From: 1/99 To: 8/99 | Employer: PuTNAM LAddERS Address: 32 HOWARd ST City, State, Zip: NEW YORK NY 10013 | Position: SHiPPiNG ClERK Supervisor: MR Lilly SiNG Phone: 212 226 5147 | $ 7.00 Per | MOVE To GA |
| From: 2/96 To: 11/98 | Employer: LUNdy BROS RESTAURANT Address: 1901 EMMONS AVE City, State, Zip: BROOKLYN NY 11235 | Position: APPRENTICE BAKER Supervisor: ChEf DOUMBIA Phone: 718 - 143 - 0022 | $ 6.75 Per | BETTER JOB |
| From: 7/89 To: 1/96 | Employer: AlPHA FLiGHT SERViCES Address: 147-Guy BREWER BLd City, State, Zip: JAMAISA NY 11434 | Position: FOOd HANdlER Supervisor: ChEf STANPEF Phone: 718 - 917 7782 | $ 6.95 Per | BETTER JOB |
| From: 11/83 To: 5/89 | Employer: DiCKARD / WiddER Address: 56-02 MASPETH AVE City, State, Zip: MASPETH NY 11378 | Position: SECURITY ElEVATOR OPER Supervisor: MR TOM MARTELLO Phone: 212 326 3700 | $ 605 Per | BETTER JOB |
| From: 11/83 To: 5/79 | Employer: LEATHER INC. Address: 138 BROADWAY City, State, Zip: NEW YORK | Position: ClERK Supervisor: MR MC GRAM Phone: | $ 6.00 Per | OUT OF BUS. |

Handwritten margin notes: 1yr, 9mo., 3yrs., 6½yrs (6½yrs), 6½yrs (6½ 2yrs), 4½2yrs

Have you ever been dismissed, or asked to resign from employment? __NO__ Date _____

Employer _____ Reason _____

Do you have any unusual job skills or qualifications? If so, describe: _____

_____

_____

Briefly explain any substantial time gaps between leaving one job and taking a new one. _____

_____

_____

# THOMAS P. DEBERRY
## ATTORNEY AT LAW

3781 Presidential Parkway
Suite 103
Atlanta, GA 30340
(770) 457-9082
(770) 457-7115
tpdeberry@edgeconnect.com

DEFENDANT'S
EXHIBIT NO.
FOR IDENTIFICATION
DATE          BETH

October 30, 2000

ARKA Executive Services
Jim Berman
Deputy Project Services
2400 Herodian Way Suite 350
Smyrna, GA 30080-8500

RE: Donald Jones

Dear Mr. Berman,

I have been retained by Mr. Donald Jones to resolve a matter of overtime pay. Mr. Jones states your company paid him overtime pay and subsequently deducted it from other pay to which he is entitled.

Please apprise me if such is not the case and provide pay records which show a proper reconciliation of this matter.

I am not concerned so much with the EEO settlement and retaliation. I am very concerned whether or not I believe a violation of the Fair Labor Standards Act has occurred.

Please correspond at your earliest convenience.

Sincerely,

Thomas P. DeBerry
Attorney at Law

*Mr. Luken,*
*I talked to Mr. DeBerry today. He advised he was not going to pursue this problem, and he notified Mr. Jones of same.*
*2-20-01 —*
*JB —*

March 31,2000

Dear Mr.Velton Bowie:    my
    I am asking to have shift from 0600 to 1400 on april 8,2000
alter to 10.00ᵖᵐto 0600 ᵃᵐon april 8,2000. I have to pick some one up a
the airport. And on april 14, 2000. I have a court date (copy inclose)
I am asking for the midnight shift because of the drug problem
I spoke to you early about.


        Very truly yours,

        Donald Jones



DEFENDANT'S
EXHIBIT NO.
FOR IDENTIFICATION
DATE        REPORTER

# STATE OF NORTH CAROLINA
NEW HANOVER COUNTY

FILE NO. 00 CVD 741

In the General Court of Justice

☒ District Court    ☐ Superior Court

| Name And Address Of Plaintiff(s) | |
|---|---|
| DONALD JONES<br>3279 STACI LANE<br>EAST POINT, GA 30344 | **ARBITRATION**<br><br>NOTICE OF ARBITRATION HEARING<br>G.S. 7A-37; Rules 3, 8, Court-Ordered Arbitration |

**VERSUS**

| Name And Address Of Defendant(s) | Name And Address of Arbitrator |
|---|---|
| MICHAEL'S AUTO SALES, INC.<br>6412 MARKET STREET<br>WILMINGTON, NC 28405 | WILLIS D. BROWN |
| **Date Of Hearing**<br>4/14/00 | **Place Of Hearing**<br>NEW HANOVER COUNTY JUDICIAL BLDG.<br>Courtroom 512, Fifth Floor - 316 PRINCESS STREET<br>WILMINGTON, NC 28401 |
| **Time**<br>12:00    ☐ AM ☒ PM | |

**ALL PARTIES TAKE NOTICE** that the person named above has been appointed arbitrator in this case, and a hearing will be held at the date, time and place shown above.

The arbitration hearing must be held on that date or within sixty (60) days of the filing of the last responsive pleading. Any continuance beyond the sixtieth day may be granted only by a judge upon written motion and a showing of a strong and compelling reason to do so.

If settlement is reached prior to the hearing date, the parties must notify the person named below before the hearing date so that the hearing may be canceled.

Failure to appear for the hearing and participate in good faith may result in an adverse award and/or sanctions. See Rule 3(I) of the Rules For Court-Ordered Arbitration.

**If you have any questions concerning this hearing, please contact the person named below.**

| Date Of Notice<br>March 22, 2000 | Signature<br>*Susan W. Greer* |
|---|---|
| | Name (Type Or Print)<br>SUSAN W. GREER |
| 316 PRINCESS STREET, SUITE 500<br>WILMINGTON, NC 28401 | ☐ Trial Court Administrator's Staff ☒ District Court Judge's Staff |
| | Telephone No.<br>(910)341-4380 |

**CERTIFICATE OF SERVICE**

I certify that a copy of this Notice was served by

☒ depositing a copy enclosed in a postpaid properly addressed wrapper in a post office of official depository under the exclusive care and custody of the U.S. Postal service directed to

     ☒ plaintiff.                 ☐ plaintiff's attorney.
     ☒ defendant.               ☐ defendant's attorney.

☐ delivering a copy personally to
     ☐ plaintiff.                 ☐ plaintiff's attorney.
     ☐ defendant.               ☐ defendant's attorney.

☐ leaving a copy at the
     ☐ plaintiff's attorney's office with a partner or employee.
     ☐ defendant's attorney's office with a partner or employee.

| Date Served<br>March 22, 2000 | Signature Of Party Or Attorney<br>*Susan W. Greer* | ☐ Trial Court Administrator's Staff<br>☒ District Court Judge's Staff |
|---|---|---|

AOC-CV-801
Rev. 4/97

Original - File    Copy - Plaintiff    Copy - Defendant    Copy - Arbitrator





DEFENDANT'S
EXHIBIT NO.
FOR IDENTIFICATION
DATE
RPTR

# APPLICATION FOR EMPLOYMENT

Wackenhut is an Equal Opportunity/Affirmative Action Employer. Applicants are considered for all positions without regard to race, color, religion, sex, national origin, age, or marital or veteran status, or the presence of a medical condition or disability.

## NAME AND ADDRESS

| 1 | 2 | 2 | - | 3 | 2 | - | 2 | 9 | 5 | 4 |

1. Social Security Number

| 0 | 2 | - | 1 | 2 | - | 0 | 3 |

2. Application Date

| J | O | N | E | S | | | | | | | | | -- | - | D | O | N | A | L | D | | | | | | | | |

3. Last Name    First    MI

| 4 | 7 | 0 | 1 | | F | L | A | T | | S | h | o | a | l | s | | R | D |

4. Address

| U | N | I | O | N | | C | I | T | Y | | | | | - | G | A |    | 3 | 0 | 2 | 9 | 1 | - |

City    State    Zip Code

( 7 7 0 ) - 7 7 4 - 9 2 1 1

5. Home Phone

(   ) -   -

6. Other Phone

## POSITION DESIRED

7. Position Applied For   _Security Guard_

8. (X) Full Time   ( ) Part Time - If Part Time, Hours Available _____

Salary Expected _____ Date Available _Now_

9. Wackenhut must provide 24 hour-a-day service to its customers. Are you available to work whatever schedule is necessary to help us meet our Corporate objectives and our obligations to our customers? Yes (X) No ( )

If no, what shifts or days are you available? _____

## PERSONAL INFORMATION

10. Are you presently employed? _Yes_   If yes, may we contact your present employer? _Yes_

11. Do you have transportation? _Yes_

12. Have you ever been employed by Wackenhut? _No_   If yes, where? _____

When? _____ Position _____

Reason for leaving _____

13. Referral Source:   ( ) Newspaper Advertisement   ( ) Job Service
                 ( ) Employee Referral   (V) Other _Friend_

14. Names and relationships of relatives or acquaintances employed at Wackenhut: _None_

15. Have you ever been convicted for the violation of any law in a military or criminal court which has not been sealed, annulled or deleted from the record? Yes (X) No (x) ~~if~~

If yes, where? _Union City_   When? _1/12/2003 ?_

Type of conviction? _Stop Sagh_

16. Are you prevented from lawfully becoming employed in this country because of Visa or Immigration Status?
Yes ( ) No (X)

**THE FOLLOWING INFORMATION WILL ONLY BE CONSIDERED IF IT IS RELEVANT TO THE POSITION FOR WHICH YOU ARE APPLYING OR COULD BEAR UPON STATE LICENSING REQUIREMENTS.**

17. Are you currently engaged in using illegal drugs? _No_   If yes, to what extent? _____

**THE FOLLOWING INFORMATION WILL BE USED ONLY TO THE EXTENT THAT IS RELEVANT TO THE QUALIFICATIONS AND POSITION FOR WHICH YOU APPLY.**

18. Circle highest grade completed:

1   2   3   4   5   6   7   8   9   10   11   ⑫   13   14   15   16 _____

19. Do you have a high school diploma or GED?   Yes (✓)   No ( )

20. Did you graduate from College?   Yes ( )   No (✗)

If yes, Name of College? _____ Degree _____

---

21. List all employment, including military, for the past seven (7) years beginning with your present job or last job held. If you need additional space, continue on a plain sheet of paper and attach it to the application.

**From** 12/99
**To** Present

Employer ARKO EXECUTIVES IN   Supervisor MR BOWIE
Address 2400 HERODIAN WAY SUITE 356
Tel. 770 955 7275   Salary 860 per HOUR
Position/Job Duties ARMED SECURITY GUARD
Reason for leaving CUT BACK IN HOURS

---

**From** 11/99
**To** 12/99

Employer RPS   Supervisor MIKE
Address ATLANTA INDUSTRIAL PARK
Tel. _____   Salary 850 per HOUR
Position/Job Duties PACKAGE HANIER
Reason for leaving FULL TIME JOB

---

**From** 11/98
**To** 9/99

Employer U.S. POSTAL SERVICE   Supervisor MS BROOKS
Address JAMES A FANCY BLDG.
Tel. _____   Salary 750 per HOUR
Position/Job Duties CASUAL MAIL HANDLER
Reason for leaving MOVE TO ATLANTA GA

---

**From** 1/99
**To** 8/99

Employer PUTNAM LADDERS   Supervisor Lilly
Address 32 HOWARD ST
Tel. _____   Salary 7.50 per HOUR
Position/Job Duties Shipping CLERK
Reason for leaving MOVE TO ATLANTA

---

**From** 2/96
**To** 12/98

Employer Lundy BRO. RESTAURANT   Supervisor Chef Dou mb,
Address 1901 EMMONS AVE
Tel. 718 743-0022   Salary 750 per HOUR
Position/Job Duties Supervised Apprentice baker
Reason for leaving Better Job

22. Have you been dismissed, or asked to resign from employment? __N/O_____ Date _____

Employer_____ Reason_____

23. Have you ever been granted a military or government security clearance? Yes ( )  No (X)

If yes, level of clearance _____

24. Do you have any special job skills or qualifications that may be relevant to the position for which you are applying? If so, describe __BANK SECURITY_____

_____

25. Names of five persons who are not related to you and who are not former employers:

| Name and Occupation | Address | Phone Number |
|---|---|---|
| Ms MARION Allen Teller Coordinator | 2165 Kellington Dir | 770-898 3485 |
| Ms Felicia Ashford Branch Manager | 45 Crooked Creek Court | 770 385 5915 |
| Ms Nancy Smith Bank Teller | 2900 Ben hill RD | 404 344 0987 |
| Ms Sandra Norwood Realtor | 3191 West Stephen RD | 770 210 0491 |
| Mr Willie Norwood Realtor | 3191 West Stephen RD | 770 210 0491 |
| Mr Cary Robinson Clerk | 504 Van Brun | 113 504 8083 |

## UNDERSTANDINGS AND AGREEMENTS

I understand that any misrepresentation, falsification or omission of this application shall be sufficient reason for refusal or dismissal of my employment. I hereby authorize investigation of all matters contained in this application and agree that if the results of such investigation are not satisfactory, any offer of employment made by The Wackenhut Corporation or any subsidiary hereinafter referred to as Wackenhut may be withdrawn, or my employment with Wackenhut may be terminated immediately. I agree to conform and adhere to the rules and regulations of Wackenhut. Further, I understand and agree that this application and any other materials I may receive are not intended to be, nor shall be construed to be a contract of employment, and that my employment and compensation may terminate, with or without cause, and with or without notice, at any time, at the option of either Wackenhut or myself.

In consideration of any offer of employment by Wackenhut, I hereby acknowledge, understand and agree that the following will constitute terms and conditions of any such employment:

(1) any losses or expenses incurred by Wackenhut, its clientele, or other third parties as a result of my unauthorized actions shall be immediately reimbursed to Wackenhut on terms that are satisfactory and acceptable to Wackenhut. To the extent permitted by law, I agree and hereby authorize Wackenhut to reduce my wages for any sums owing by me hereunder; and

(2) in recognition of the fact that any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the customers or clients of Wackenhut based on the same injury or injuries, and to the extent permitted by law, I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make claims or bring suit against any client or customer of Wackenhut for damages based upon injuries which are covered under such Workers' Compensation statutes.

Signature of Applicant _Donald Jone_          2/12/2003

Date

# Enrollment Application and/or Change Form

Wackenhut

Form Type 10

| Benefit Group | Effective Date of Coverage | Payroll Cycle | Employment Status | Qualifying Event |
|---|---|---|---|---|
| 42A (B9760) | 11/1/05 | ☐ Weekly / ☑ Bi-Weekly | ☑ Hourly ☐ Salaried ☐ Union ☐ Non Union ☐ Exempt ☐ Non Exempt | ☐ Beneficiary Change ☐ Birth/Adoption ☐ Court Order (QMSCO) ☐ Death of Dependent ☐ Divorce ☐ Full-Time to Part-Time ☐ Ineligible Dependent ☐ Leave of Absence ☐ Marriage ☐ New Hire ☐ New Hire-Incumbent ☑ Open Enrollment (11-1) ☐ Part-Time to Full-Time ☐ Rehire after LESS than 90 days ☐ Rehire after MORE than 90 days ☐ Return From Leave ☐ Transfer ☐ Other |

## EMPLOYEE INFORMATION

| Last Name | First Name | MI | Social Security Number | Date of Birth (MM/DD/YYYY) | Gender |
|---|---|---|---|---|---|
| YOUNG | DONALD | | 122 / 32 / 245 4 | / / | ☐ Male ☐ Female |

Qualifying Event Election/Change Type: ☐ Initial Enrollment ☐ Change Coverage to the Elections marked below ☐ Cancel ALL Coverage ☐ Other _____

## ENROLLMENT INFORMATION

### Medical - UHC PLAN 42 CHOICE PLUS

| Plan | Coverage Level |
|---|---|
| ☑ Waive (No Coverage) ☐ A-Level 1 ☐ B-Level 2 ☐ C-Level 3 | ☑ Waive (No Coverage) ☐ 1-Employee Only ☐ 2-Employee & One ☐ 3-Employee & Family |

* Complete "Refusal of Health Coverage" section

### Medical - Starbridge

| Plan | Coverage Level |
|---|---|
| ☑ Waive (No Coverage) ☐ A-Level 1 ☐ B-Level 2 ☐ C-Level 3 | ☑ Waive (No Coverage) ☐ 1-Employee Only ☐ 2-Employee & One ☐ 3-Employee & Family |

### Optional Life *

☑ Waive (No Coverage)
☐ A2 - $10,000
☐ A4 - $20,000
☐ A6 - $30,000
☐ A8 - $40,000

### Basic Life *

☑ Waive (No Coverage)
☐ A1 - $ 10,000

* Complete "Beneficiary Designation" section

### Dental/Vision - Starbridge

☑ Waive (No Coverage)
☐ A1- Employee Only
☐ A2- Employee & One
☐ A3- Employee & Family

### Term Life - Starbridge

☑ Waive (No Coverage)
☐ A1 - $10,000 (Employee Only)

### Income Replacement - Starbridge

☑ Waive (No Coverage)
☐ A1- Employee Only *

* Not available in California, New York, New Jersey, Hawaii, Rhode Island and Puerto Rico

* Complete "Beneficiary Designation" section

## REFUSAL OF HEALTH COVERAGE

The reason I am not enrolling in the Medical Plan is as follows:

☑ Coverage through an Individual Plan
☐ Coverage through the U.S. Military
☐ Covered as a dependent under my spouse's plan
☐ Retiree coverage under another plan
☐ Other _____

## COVERED DEPENDENTS  ☐ Check box and list Additional Dependents on the back

| Name (Last, First, MI) | Relation | DOB (MM/DD/YYYY) | Gender | Full-Time Student |
|---|---|---|---|---|
| Soc. Sec. No. | Spouse | | ☐ Male ☐ Female | ☐ Yes ☐ No |
| Soc. Sec. No. | Eligible Child | | ☐ Male ☐ Female | ☐ Yes ☐ No |
| Soc. Sec. No. | Eligible Child | | ☐ Male ☐ Female | ☐ Yes ☐ No |
| Soc. Sec. No. | Eligible Child | | ☐ Male ☐ Female | ☐ Yes ☐ No |
| Soc. Sec. No. | Eligible Child | | ☐ Male ☐ Female | ☐ Yes ☐ No |

## BENEFICIARY DESIGNATION

| Name (Last, First, MI) | % | Relation | Address |
|---|---|---|---|
| Soc. Sec. No | | | |
| Soc. Sec. No | | | |
| Soc. Sec. No | | | |
| Soc. Sec. No | | | |

## AUTHORIZATION AND NOTICE OF ENROLLMENT RIGHTS

My Group Insurance Plan (Plan) is part of my employer's 125 Plan. The 125 Plan permits me to make changes to my annual enrollment elections during open enrollment. If I incur a Change in Status, as described in "Your Benefits Under Section 125," I may be permitted to change my annual enrollment elections more frequently than annually.

I understand that if I and/or my dependents waive coverage and want to participate in the Plan at a later date, provided I qualify to treatment as a late enrollee. I further understand that if I (or my dependents) elect not to participate in the Plan (or other health coverage), I may be permitted to enroll myself or my dependents in this Plan after such other coverage ends, provided I notify the Insurer or Plan Administrator within 31 days after such other coverage ends. If I gain a new dependent due to marriage, birth, adoption, or placement for adoption, I may be able to enroll myself and my dependents in the Plan if I notify the Insurer or Plan Administrator within 31 days after that Change in Status. I have received and read the printed material explaining the Plan and my benefit choices. I understand that by signing a binding election as to my benefit choices and that future increases, I direct my employer to reduce the amount of my earnings by the amount necessary to pay for the benefits I have selected under this Form. I understand that this election is in effect for the entire Plan year and cannot be changed unless I have a permitted Change in Status. I further understand that in future Plan years unless I complete a new Enrollment Form, I will automatically be re-enrolled in the benefits I have selected and I will be subject to any future changes.

I certify that all the information provided is true and correct. I understand and agree that any omissions or incorrect statements made on this Form may invalidate my election and/or my dependents' coverage. I further understand that coverage will become effective only on the date specified by the Insurer or Plan Administrator.

| Signature | Date |
|---|---|
| Donald Young  DECLINED | 10/6/05 |

| Qualifying Event Date | Authorization | Wackenhut Office | Client |
|---|---|---|---|
| 11/1/05 | DDD | ATL | 73413 |





DEFENDANT'S
EXHIBIT NO. 64
FOR IDENTIFICATION
DATE ___ RPTR ___

### The Wackenhut Corporation
### Wackenhut Institute
### General Orientation and Training Record

**Part 1 — Personal Data**

| Name: Last: Jones First: Donald Middle: | Date: 2/24/2003 |
|---|---|
| Soc id Security Number: | Area/Branch/Facility: The Wackenhut Corporation Atlanta Georgia (ATL01) |
| City: Atlanta | State: Georgia | Zip Code: 30329-2012 |

**Certification**

 I understand that I will not become an employee to the Wackenhut Corporation (TWC) unless I complete to the satisfaction of the company, an orientation program to familiarize me with the requirements of being a security officer and I am at that time offered employment by the company. During this orientation, I will not be an employee of the company I will not do any productive work for or receive any pay from the company. At the end of the orientation, the company in its sole discretion may not offer me employment. I understand that this stipulation may extend to my participation in any training program required by federal, state or local legislation foe which compensation is not required by law. The company may supply me with one or more uniform (or parts thereof) before, during or after the orientation, but such action on the part of the company shall in no way be construed or considered as an act of hire. I have not been guaranteed or promised employment by the company. If I do receive one or more uniforms (or parts there of) from the company before or after being hired by the company I shall return all items in good condition, save for ordinary wear, at the termination of my employment by the company.

_Donald Jones_
Applicant

_Kristie O. Smith_
Witness

**Part 2 — Pre-Employment Orientation Program**

| Subject | Program Length | Date | Initials | |
|---|---|---|---|---|
| | | | Applicant | TWC Agent |
| Security Officers Orientation Program (SOGP) 1,2,3 | 2 Hrs. | 022403 | DJ | K |
| Sexual Harassment (LP – 59) / Video | 1 Hr. | 022403 | DJ | K |
| CPR and First Aid | 6 Hrs. | | DJ | |

**State of Georgia Required Training**

| General Duties and Responsibilities (LP1) | 2 Hrs. | 022403 | | |
| Legal Authority (LP3) | 2 Hrs. | | | |
| Search and Seizure (LP5) | 2 Hrs. | | | |
| Access control (LP18) | 2 Hrs. | | | |
| Georgia Required Training | Total 8 Hours | | DJ | K |
| TR – 3 | Score: IN | | DJ | K |
| TR – 11 | Score: 176 | | DJ | K |

**Part 3 — General Training**

| Subject | Employee Initials | Length | Successful Completion | | Comments |
|---|---|---|---|---|---|
| | | | Date | Sup. Initials | |
| Received Security Officer Hand Book | DJ | | 022403 | K | |
| Completed Security Officer Handbook Exam | DJ | 1 Hr | 022403 | K | |

| Subject | Employee Initials | Length | Successful Completion Date | Sup. Initials | Comments |
|---|---|---|---|---|---|
| General Duties and Responsibilities LP1 | | 1 Hr. | 02253 | | |
| Shift Work (Sleep and the Security Officer) LP33 | | 1.5 Hrs | | | |
| Managers Guide to Security Officers Power of Arrest LP 38 | | 1 Hr | | | |
| Legal Authority LP 3 | | 2 Hrs. | | | |
| Search and Seizure LP 5 | | 1 Hr. | | | |
| Evidence and Crime Scene LP 4 | | 1 Hr. | | | |
| Courtroom Procedures LP 11 | | 2 Hrs. | | | |
| Interpersonal Communications LP 17 | | 2 Hrs. | | | |
| Human relations LP 2 | | 1.5 Hrs. | | | |
| Abnormal Relations LP 35 | | 1 Hr. | | | |
| Interviewing Techniques LP 56 | | 1 Hr. | | | |
| Telephone Procedures and Etiquette LP 13 | | 1 Hr. | | | |
| Private Security Officers and Police relations LP 56 | | 1 Hr. | 02203 | | |
| Fundament of Personal Security LP 50 | | 1 Hr. | | | |
| Techniques of Effective Patrol LP 6 | | 1.5 Hrs. | | | |
| Patrol Vehicle Driving Safety LP 12 | | 1 Hr | | | |
| Traffic Control LP 12 | | 1 Hr | | | |
| Two-Way Radio Communications LP 14 | | 1 Hr. | | | |
| Field Note Taking LP 22 | | 1 Hr. | | | |
| Protective Alarm System LP 29 | | 1 Hr. | | | |
| Facility Access and Key Control LP 18 | | 1 Hr. | | | |
| Night Vision LP 10 | | 1 Hr. | | | |
| Crowd Control LP 9 | | 1 Hr. | 03703 | | |
| Controlled Substance LP 44 | | 2 Hr | | | |
| OSHA First responder Awareness LP 32 | | 1 Hr. | | | |
| Accident Prevention LP 32 | | 1 Hr. | | | |
| Fire Detection, Suppression, and Life Safety | | 1 Hr. | | | |
| Disaster Response LP 52 | | 1 Hr. | | | |

| Subject | Employee Initials | Length | Successful Completion Date | Sup. Initials | Comments |
|---|---|---|---|---|---|
| Serving the Security Customer LP 63 | | 1 Hr. | | | |
| Closed Circuit Television LP 69 | | 1 Hr. | | | |
| Elevator Entrapment | | 30 Min. | | | |
| Violence in the Workplace LP 53 | | 2 Hrs. | | | |
| Robbery Prevention and Response LP 31 | | 1 Hr. | | | |
| Managers Guide to Bomb Threats LP 19 | | 1 Hr. | | | |
| Information Security/Industrial Espionage LP 19 | | 1 Hr. | | | |
| Over View | | 6 Hrs. | | | |

| Subject | Employee Initials | Length | Successful Completion | | Comments |
|---|---|---|---|---|---|
| | | | Date | Sup. Initials | |
| TR – 7A | | 1 Hr | | | |
| TR – 7B | | 1 Hr. | | | |
| TR – 7C | | 1 Hr. | | | |
| WB 82 | | 2 Hrs. | | | |
| WB 83 | | 2 Hrs. | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

On the Job Training

| Subject | Employee Initials | Length | Date/Time | Instructor | Comments |
|---|---|---|---|---|---|
| General Post Orders | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Part 6 – Arm Qualification / Airsoft Range Card

| Course | Date | Qualified Yes/No | Instructors Signature | Requalification Date | Instructors Signature |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**I certify that I have received the orientation and training specified in this record.**

| Date | Employee's Signature | Witness/Training Manager |
|---|---|---|
| 2/28/2007 | Donald Jons | Kristie |
| | | |
| Date | Employee's Signature | Witness/Training Manager |
| | | |
| Date | Employee's Signature | Witness/Training Manager |
| | | |
| Date | Employee's Signature | Witness/Training Manager |
| | | |
| Date | Employee's Signature | Witness/Training Manager |