# EXHIBIT D

Dockets.Justia.com

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 2279

Page 1 of 8

FOCUS™ Terms

Search Within Original Results (1 - 1)  Go

View: **Full** | Custom

1 of 1

FAST Print  Print | Dow

More Like This | More Like Selected Text | *Shepardize®* | TOA

Jackson v. Citiwide Corporate Transp., Inc., 2004 U.S. Dist. LEXIS 2279  (Copy w/ Cit

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 2279**

*2004 U.S. Dist. LEXIS 2279, \**

DANISE JACKSON, Plaintiff, - against - CITIWIDE CORPORATE TRANSPORTATION, INC., Defendants.

02 Civ. 1323 (DC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 2279

February 17, 2004, Decided
February 17, 2004, Filed

**DISPOSITION:** **[\*1]** Defendant's motion for summary judgment granted. Complaint dismissed with prejudice and with costs but without fees.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff alleged that she was subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and state law by defendant her former employer. Defendant filed a motion for summary judgment as to all claims.

**OVERVIEW:** Plaintiff argued that she was sexually harassed because of three items: (1) a supervisor made repeated sexual jokes and comments; (2) the supervisor stared at her breasts "on frequent occasions"; and (3) on one occasion the supervisor pinched her on the side and rear end, but provided no other evidence to support her contentions. Defendant denied these allegations, but regardless, the district court found that the allegations contained in plaintiff's affidavit were insufficient to support a jury verdict where, inter alia, even assuming the purported pinch actually occurred, without more, this one-time occurrence could not constitute hostile environment sexual harassment as a matter of law. Finally, the district court held that a reasonable jury could only conclude that plaintiff was fired for a legitimate, non-discriminatory reason, as one of defendant's largest customers had complained about plaintiff rudeness and lack of service, and this was not the first blemish on plaintiff's record (she had previously quit her position with defendant without notifying the company).

**OUTCOME:** Defendant's motion for summary judgment was granted.

**CORE TERMS:** joke, retaliation, remember, reasonable jury, purported, sex, sexual harassment, protected activity, hostile, sexual, fired, reservation, perverted, phone, sexual harassment, summary judgment, prima facie case, discriminatory, harassment,

pervasive, severity, staring, noticed, times, chest, quit, hostile work environment, reasonable person, causal connection, workplace

## LEXISNEXIS® HEADNOTES                                          ⊟ **Hide**

Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment 🔍

*HN1* ⊥ To prevail on a claim of hostile work environment harassment, a plaintiff must show that her workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment 🔍

*HN2* ⊥ Whether a work environment was "hostile" or "abusive" depends on the "totality of circumstances," including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. This analysis must be done from both subjective and objective viewpoints, i.e., from the viewpoint of both the plaintiff and a reasonable person. More Like This Headnote

Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment 🔍

*HN3* ⊥ Incidents constituting hostile environment sexual harassment must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. More Like This Headnote

Civil Procedure > Summary Judgment > Opposition > General Overview 🔍
Labor & Employment Law > Discrimination > Retaliation > Statutory Application > General Overview 🔍
Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview 🔍

*HN4* ⊥ Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., prohibits employers from taking retaliatory action against employees who oppose alleged discriminatory practices. 42 U.S.C.S. § 2000e-3(a). More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview 🔍
Labor & Employment Law > Discrimination > Retaliation > General Overview 🔍

*HN5* ⊥ On a motion for summary judgment: (1) the plaintiff must demonstrate a prima facie case of retaliation; (2) the defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action; and (3) if the defendant meets its burden, the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities 🔍
Labor & Employment Law > Discrimination > Retaliation > General Overview 🔍

*HN6* ⊥ To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse

employment action.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation > General Overview 🔖

*HN7* 🔖 The term "protected activity" pursuant to retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., refers to action taken to protest or oppose statutorily prohibited discrimination. 42 U.S.C.S. § 2000e-3. Informal as well as formal complaints constitute protected activity. Moreover, to establish that activity is protected, a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed.  More Like This Headnote

**COUNSEL:** For Plaintiff: Louis Ginsberg, Esq., THE LAW FIRM OF LOUIS GINSBERG, P.C., New York, New York.

For Defendant: Daniel Cherner, Esq., LAW OFFICES OF DANIEL CHERNER, New York, New York.

For Defendant: William Madonna, Esq., LAW OFFICES OF WILLIAM MADONNA, Bronx, New York.

**JUDGES:** DENNY CHIN, United States District Judge.

**OPINION BY:** DENNY CHIN

 **OPINION**

*MEMORANDUM DECISION*

**CHIN, D.J.**

In this employment case, plaintiff Danise Jackson alleges that she was subjected to sexual harassment and retaliation by her former employer, defendant Citiwide Corporate Transportation, Inc. ("Citiwide"). Citiwide moves for summary judgment dismissing the complaint. For the reasons that follow, the motion is granted and the complaint is dismissed.

*STATEMENT OF THE CASE*

**A. *The Facts***

The facts are not in dispute, except as otherwise noted. They are as follows:

Citiwide is a car service company that has been in business since the 1960's. (Ciavarella Aff. P 2). Jackson was employed as a telephone operator by Citiwide twice. First, she worked for Citiwide from **[*2]** November 14, 1998 until April 19, 1999, when she quit. (*Id.* P 5). Jackson admitted at her deposition that she quit without notifying Citiwide that she was resigning or quitting -- she simply got her paycheck, left without telling anyone that she was quitting, and did not return. (Jackson Dep. 78-79). Second, she reapplied to Citiwide for employment and was rehired on March 20, 2000. She worked with Citiwide until June 19, 2000, when she was fired. (Ciavarella Aff. P 5).

Jackson was told by Citiwide that she was being fired because she had been rude to a client. (Jackson Dep. 140). In fact, a representative of a substantial client -- Morgan Stanley ⌄Dean

Witter, Inc. ("Morgan Stanley ▾") -- complained to Citiwide about Jackson in writing:

> I frequently use Citiwide to make arrangements for carservice for my bankers. I wanted to bring to your attention one employee at Citiwide by the name of Danise Jackson.

> On May 17, 2000 I had reservation # 0573 to pick up a client …. I made the reservation on May 16th with Danise Jackson. She was very rude taking the reservation over the phone. I didn't have a good feeling about her. We then received a phone call from the client saying **[*3]** that there was no car. The car never showed up to pick up the client ….

> I was very upset because not only was this a very important client, but Danise's attitude is very unprofessional ….

> I do see that Danise Jackson is still at Citiwide because she is still taking reservations. It is at a point where I hang up the phone when she answers because I do not trust her. Her attitude and work ethics are very unappropriate and needs to change. I hope that something is done to take care of her customer service issues.

(Cherner Aff., Ex. B).

## B. *Prior Proceedings*

Jackson commenced this action on February 20, 2002. The complaint asserts claims for hostile environment sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (McKinney 2001), and the New York City Human Rights Law, N.Y.C. Adm. Code § 8-101 *et seq.* Jackson seeks $ 5 million in front and back pay and benefits and $ 10 million in punitive, liquidated, and compensatory damages.

The parties engaged in discovery. This **[*4]** motion followed.

## *DISCUSSION*

I address the hostile environment sexual harassment claim and the retaliation claim in turn. ¹

### FOOTNOTES

1 For these purposes, there are no material differences between Title VII and state and city law.

## A. *Hostile Environment Sexual Harassment*

*HN1*To prevail on a claim of hostile work environment harassment, a plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult … that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Howley v. Town of Stratford,* 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)). *HN2*Whether the work environment was "hostile" or "abusive" depends on the "totality of circumstances," including: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive **[*5]**

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 2279

Page 5 of 8

utterance; and whether it unreasonably interferes with an employee's work performance.'" *Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998); see Clark Co. School Dist. v. Breeden, 532 U.S. 268, 270-71, 149 L. Ed. 2d 509, 121 S. Ct. 1508 (2001); Faragher v. Boca Raton, 524 U.S. 775, 787-88, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998)*. This analysis must be done from both subjective and objective viewpoints, *i.e.,* from the viewpoint of both the plaintiff and a reasonable person. *Id.*

Here, on the record before the Court, no reasonable jury could find that Jackson was subjected to sexual conduct in her workplace that was severe or pervasive or that was sufficient to alter the conditions of her employment. The only evidence submitted by Jackson is her own conclusory affidavit, which is insufficient to raise a genuine issue of fact for trial.

In her affidavit, Jackson complains that she was sexually harassed because of three items: (1) a supervisor, Jack Galati, made repeated sexual jokes and comments; (2) Galati stared at her breasts "on frequent occasions"; and (3) on one occasion Galati pinched her on the side and rear end. (Jackson Aff. PP 5, 8, 10). **[*6]** Jackson has provided no other evidence to support her claim. Citiwide denies these allegations, but I need not resolve the factual dispute, for the allegations contained in Jackson's affidavit are insufficient to support a jury verdict in her favor on her sexual harassment claim.

As to the jokes and comments, Jackson simply has been unable to provide any detail. She testified at her deposition as follows:

> Q. To the best of your recollection, in as much detail as you can, tell me, just go down the list if you can, each sexual joke that you can recall he told?
>
> A. I can't. I don't remember the jokes he told.
>
> Q. Do you recall anything about them at all?
>
> MR. GINSBURG: Just so it is noted, she already testified about them being perverted.
>
> A. They were perverted.
>
> Q. What do you mean by perverted?
>
> A. If it contains sex or people having sex or bunnies having sex or you having sex, it's perverted.
>
> Q. Did he ever tell any jokes about bunnies having sex?
>
> A. I don't remember.
>
> Q. Did he ever tell any jokes about people having sex.
>
> A. I don't remember.
>
> ...
>
> Q. Do you remember, if not the exact words, the essence or the sum and substance **[*7]** of the jokes he made?
>
> A. I still don't understand.
>
> Q. Do you remember anything about any jokes you say that he made that were

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 2279

Page 6 of 8

sexual, other than what you have already told me?

A. No.

Q. You don't remember any specific sexual joke he made?

A. No, no.

(Jackson Dep. 71-73). Without any detail or even the sum and substance of the jokes, no reasonable jury could evaluate the severity of the purported jokes or whether they contributed to creating a hostile work environment.

Likewise, Jackson has provided no detail as to the purported staring at her breasts. She testified:

Q. So it's your allegation that Mr. Galati would stare at your bosom for long periods of time?

A. Yes.

Q. How many times did he do that.

A. I don't know.

...

Q. How many times, to the best of your recollection, did Mr. Galati stare at your bosom?

A. I don't recall.

Q. Was it more than three, if you recall?

A. I don't remember.

...

Q. When you say that Mr. Galati would stare at your chest, how long would he stare at your chest for?

A. I don't know how long.

...

Q. The times that you noticed Mr. Galati staring at your **[*8]** chest from the first time you noticed it to the last time you noticed it, what time period was that? How long a time span?

A. I don't know.

Q. Was it over a period of a month, if you recall?

A. I don't remember?

Q. Was it less than a month or more than a month, if you recall?

A. I don't recall.

(*Id.* 151-52, 155-57). Again, without any information as to frequency or severity or duration of the alleged stares, no reasonable jury could be expected to be able to evaluate whether these purported actions contributed to the altering of Jackson's conditions of employment. Even assuming that the purported stares affected her, the jury could not be expected -- without any detail -- to determine whether the purported stares would have affected a reasonable person.

Finally, as to the purported pinch, even assuming this occurred, without more, this one-time occurrence cannot constitute hostile environment sexual harassment as a matter of law. *See* *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997) ("The $^{HN3}$incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (*quoting* **[*9]** *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577 (2d Cir. 1989)).

The sexual harassment claim is dismissed.

## B. *Retaliation*

$^{HN4}$Title VII prohibits employers from taking retaliatory action against employees who oppose alleged discriminatory practices. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 621 *et seq.* $^{HN5}$On a motion for summary judgment, "(1) plaintiff must demonstrate a prima facie case of retaliation, (2) defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action, and (3), if the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir. 1998).

$^{HN6}$To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection **[*10]** between the protected activity and the adverse employment action." *Distasio,* 157 F.3d at 66; *see also* *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir. 1996).

$^{HN7}$The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also* *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134-35 (2d Cir. 1999). Informal as well as formal complaints constitute protected activity. *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990). Moreover, to establish that activity is protected, a plaintiff "need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed." *Sumner,* 899 F.2d at 209; *see also* *Grant v. Hazelett Strip-Casting Corp.,* 880 F.2d 1564, 1569 (2d Cir. 1989).

Here, Jackson has not demonstrated a prima facie case of retaliation. She has presented no evidence from which a reasonable jury could find the existence of a genuine issue of fact as to a causal connection **[*11]** between any protected activity and her discharge.

Of course, Jackson did suffer adverse employment action, for she was fired. But on the record before the Court, a reasonable jury could only conclude that she was fired for a legitimate, non-discriminatory reason -- one of Citiwide's major customers, Morgan Stanley, complained about her rudeness and apparent failure to send a car for one of Morgan Stanley 's important clients. Indeed, the Morgan Stanley representative was so

incensed she refused thereafter to deal with Jackson, hanging up if Jackson answered the phone. Jackson has presented no evidence to suggest that the complaint from Morgan Stanley was a pretext to cover up an intent to retaliate against her for complaining of the alleged harassment. In fact, the Morgan Stanley complaint was not the first blemish on Jackson's record. She had previously quit her position with Citiwide without notifying the company. (Jackson Dep. 78-79).

Jackson does allege that she was fired only two weeks after she purportedly complained about the harassment. This allegation is insufficient to raise an issue for trial. As discussed above, Jackson cannot provide any specificity whatsoever as to the **[*12]** alleged jokes and staring. Consequently, no reasonable jury could conclude that Jackson had a good faith, reasonable belief that she had been subject to unlawful sexual harassment.

The retaliation claim is dismissed as well.

### CONCLUSION

For the foregoing reasons, Citiwide's motion for summary judgment is granted. The complaint is dismissed with prejudice and with costs but without fees.

SO ORDERED.

Dated: February 17, 2004

DENNY CHIN

United States District Judge


Jackson v. Citiwide Corporate Transp., Inc., 2004 U.S. Dist. LEXIS          Pages: 10
2279  (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 2279**
View: Full
Date/Time: Thursday, February 21, 2008 - 7:19 PM EST

* Signal Legend:
🌐 - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

Ⓡ LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS™ Terms                           Search Within  Original Results (1 - 1)    [Go]

View: **Full** | Custom                                    1 of 1                     **FAST Print**    Print | Dow
                    More Like This | More Like Selected Text | *Shepardize®* | TOA
            Dula v. Eastman Kodak Co., 31 Empl. Prac. Dec. (CCH) P33,336   (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **1980 U.S. Dist. LEXIS 17108**

*1980 U.S. Dist. LEXIS 17108, *; 31 Empl. Prac. Dec. (CCH) P33,336*

Larry D. Dula, Plaintiff v. Eastman Kodak Company, Defendant.

Civil Action No. 79-145 Civ-T-H.

United States District Court for the Middle District of Florida, Tampa Division.

1980 U.S. Dist. LEXIS 17108; 31 Empl. Prac. Dec. (CCH) P33,336

August 29, 1980

**CORE TERMS:** customer, supervisor, racial prejudice, summary judgment, deposition, termination, animus, racial discrimination, prima facie case, disparate treatment, prejudiced, racially, well-founded, impression, discharged, pretext, timely filed, investigated, training, tact

**COUNSEL:** [*1] Prince J. McIntosh and Patrick W. Skelton, Tampa, Florida, for Plaintiff.

Donald B. Harden and Benjamin B. Culp, Jr. (Fisher & Phillips), Atlanta, Georgia, for Defendant.

**OPINION BY:** HODGES

**OPINION**

HODGES, D.J.: Before the Court is the motion of the Defendant Eastman Kodak Company (Kodak) for summary judgment.

This is an employment discrimination action arising from the termination of Plaintiff's employment with Kodak. Plaintiff, a black man, was employed by Kodak from June 24, 1974 until his discharge on September 4, 1977. He was initially employed as an equipment service trainee, and upon completion of this training, as an equipment service representative. Plaintiff's primary job responsibility was servicing microfilm equipment at the offices of Kodak customers. Plaintiff was discharged after a number of complaints were made against him by various customers relating to his conduct while on their premises. Good customer relations are fundamentally important to Kodak, and Kodak requires its service representatives to utilize tact, discretion, patience and courtesy in dealing with customers in order to maintain good customer relations. [1]

**FOOTNOTES**

1 The job description for the position of service representative sets forth the following personal requirements:

"Has extensive direct in-person contacts with customers, which have an important effect on: Establishing and maintaining customer goodwill, and conveying a good company image. Tact and discretion must be exercised in placating customers when equipment failure causes inconvenience to them. Must be patient and courteous when training customers in the care and operation of equipment."

**[*2]** After his termination Plaintiff timely filed a charge of racial discrimination with the Equal Employment Opportunity Commission. The EEOC issued its determination 2 and notice of right to sue on November 7, 1978. On February 5, 1979, Plaintiff timely filed this action.

**FOOTNOTES**

2 The EEOC determined that there was not reasonable cause to believe that Plaintiff's allegations of racial discrimination were true.

In the Court's opinion, the Plaintiff has failed to establish a prima facie case of racial discrimination and the Defendant's motion for summary judgment is well taken. To establish a prima facie case in a discrimination action involving alleged violation of work requirements, the Plaintiff must show that he did not violate the rules, or that, if he did, white employees who engaged in similar acts were not punished similarly. Green v. Armstrong Rubber Company, 612 F.2d 967 (5th Cir. 1980). Thus, Plaintiff must show that the conduct-based complaints were not true in fact, or that he received disparate treatment with regard to the number and kind of complaints against him (i.e., that the assigned reasons for his termination were pretextual).

There is no genuine issue **[*3]** of fact that Plaintiff's supervisors at Kodak investigated all of the complaints against the Plaintiff and concluded that they were well-founded. Plaintiff presents no evidence that the factual bases for the complaints were false; indeed Plaintiff admits that many of the alleged incidents occurred. 3 Although Plaintiff complained to his supervisors that racial prejudice on the part of the customers was the cause or basis of some of the complaints (and he persists in that contention in this case), the investigations by Kodak supervisors disclosed no evidence of racial prejudice by customers. Plaintiff has even now presented no specific facts which show that the complaints were based on racial prejudice. With regard to most of the complaints, Plaintiff merely states that he has an "impression" that racial prejudice was involved because of a "general feeling" he has that whites are hostile toward blacks or because he saw no black employees working for the companies which he serviced. (See, Dula deposition, at 91-94, 106-107, 122-23, 136, 147). These unsupported "impressions" are insufficient to present a factual issue whether the complaints were well-founded.

**FOOTNOTES**

3 For example, Plaintiff admitted that he parked his car in the Jim Walter Vice President's parking space. Plaintiff claimed that it was raining and that a receptionist, although initially directing him to move, later gave him permission to park there.

**[*4]** The affidavit and deposition of R. C. Cook, one of the Plaintiff's supervisors, establishes without dispute that no other Kodak service representative in the Jacksonville

District had customer relations problems or complaints comparable to those of the Plaintiff. (See, Cook affidavit, at 3; deposition, at 5-6). There is thus no basis for a finding of disparate treatment. Although Plaintiff's counsel stated at the pretrial conference that he "hopes" to present evidence at trial of disparate treatment, mere hope will not withstand a motion for summary judgment.

Even assuming that the Plaintiff has established a primna facie case, uncontradicted evidence establishes that the Plaintiff was discharged for a legitimate non-discriminatory reason, i.e., the many customer complaints against him. This showing would of course rebut the Plaintiff's prima facie case. See, Furnco Construction Company v. Waters,   U.S.   , 98 S.Ct. 2943 (1978); McDonald [sic] Douglas Corporation v. Green, 411 U.S. 801 (1973). Plaintiff has put forth no evidence creating an issue that Kodak's articulated reason was a pretext for discrimination. Pretext means "the use, by employers of legitimate [*5] reasons for action to hide racial animus in decision making." Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1255, n.3 (5th Cir. 1977). In this case the Plaintiff would have to show that Kodak used the customer complaints to camouflage racial animus in the termination decision. There is no evidence that any of the Plaintiff's supervisors involved in the decision to fire him were racially prejudiced against him. Indeed, in his disposition Plaintiff disclaims any allegation of racial prejudice against any Kodak supervisor except Calvin Butz. The only evidence Plaintiff offers of this alleged prejudice of Mr. Butz is the charge that Mr. Butz was always serious and businesslike and never joking around him. (See, Dula deposition, at 218-19). Upon further examination, Plaintiff even admitted that Mr. Butz acted in that manner all the time around all the service representatives. (See, Dula deposition, at 219-20). This is clearly an insufficient showing of racial animus in the decision to terminate Plaintiff's employment.

The main thrust of Plaintiff's charges, however, is not that Kodak or its employees were racially prejudiced, but that Kodak's customers were racially prejudiced, [*6] and that this prejudice must be imputed to Kodak. If racial animus was the true basis of the customer complaints, and Kodak was aware of this fact (or perhaps if Kodak failed to investigate the complaints, and, in effect, "closed its eyes" to the discrimination), Plaintiff might have grounds for relief. But as previously stated, Plaintiff's supervisors investigated each of the complaints and discovered them to be well-founded in fact. Plaintiff's allegations of racial prejudice by customers appears to be based more on his impression of racial attitudes by whites in general than on specific, articulable facts.

Although summary judgments are especially disfavored in employment discrimination cases, Plaintiff's bare allegations of racial discrimination without supporting facts, are clearly insufficient to subject the Defendant to the expense of a trial on the merits in this case. The Court finds that there are no issues of material fact and that the Defendant is entitled to judgment as matter of law. Defendant's motion for summary judgment is Granted, and the Clerk is directed to enter judgment for the Defendant and against the Plaintiff.

The parties shall bear their respective [*7] costs.

It is so Ordered.

Judgment

This action came on for (hearing) before the Court, Honorable Wm. Terrell Hodges, United States District Judge, presiding, and the issues having been duly (heard) and a decision having been duly rendered,

It is Ordered and Adjudged that the plaintiff take nothing, that the action be dismissed on the merits, each party shall bear their respective costs.

View: **Full** | Custom     ◁◁◁◁◁ 1 of 1 ▷▷▷▷▷    **FAST Print**   Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | *Shepardize*® | TOA
**Dula v. Eastman Kodak Co., 31 Empl. Prac. Dec. (CCH) P33,336** (Copy w/ Cite)     Pages:    **4**

Service: **Get by LEXSEE®**
Citation: **1980 U.S. Dist. LEXIS 17108**
View: Full
Date/Time: Thursday, February 21, 2008 - 7:20 PM EST

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS™ Terms                              | Search Within | Original Results (1 - 1)    [Go]

View: **Full** | Custom          ⟪⟪⟪ 1 of 1 ⟫⟫⟫          [FAST Print]   Print | Dow
                    More Like This | More Like Selected Text | Shepardize® | TOA
            Ⓐ Gallaspy v. Raytheon Tech. Servs. Co., 2005 U.S. Dist. LEXIS 16342  (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 16342**

*2005 U.S. Dist. LEXIS 16342, \**

PAUL GALLASPY, Plaintiff, v. RAYTHEON TECHNICAL SERVICES COMPANY dba RAYTHEON
COMPANY dba PATRIOT OVERSEAS SUPPORT COMPANY, Defendant.

EP-04-CV-0012-FM

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, EL PASO
DIVISION

2005 U.S. Dist. LEXIS 16342

August 9, 2005, Decided

**SUBSEQUENT HISTORY:** Subsequent appeal at Gallaspy v. Raytheon Tech. Servs. Co.,
2006 U.S. App. LEXIS 29806 (5th Cir. Tex., Dec. 5, 2006)

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff worked for a company that provided technical
assistance to the United States Army relating to a missile system. After plaintiff was
removed from his South Korea assignment, plaintiff sued defendant employer, alleging
race discrimination under 42 U.S.C.S. § 1981, Title VII of the Civil Rights Act, 42 U.S.C.S.
§ 2000e et seq., and Tex. Lab. Code Ann. §§ 21.051 and 21.055. The employer moved for
summary judgment.

**OVERVIEW:** The court denied summary judgment on plaintiff's Title VII claims. Although
the employer presented evidence demonstrating that plaintiff was laid off because the
employer's customer, the United States Army, requested that the employer replace
plaintiff, plaintiff raised a genuine issue of material fact that the employer's reason for
discharging him was a mere pretext for race discrimination by presenting evidence that he
was not removed by the request of the customer, but by discriminatory actions of the
employer. However, because 42 U.S.C.S. § 1981 and Tex. Lab. Code Ann. §§ 21.051 and
21.055 did not apply extraterritorially, they did not apply to plaintiff's complaint of
discriminatory removal from his position in Korea, and the employer was entitled to
summary judgment on those claims.

**OUTCOME:** The employer's motion for summary judgment was granted in part and was
denied as to plaintiff's Title VII claims.

**CORE TERMS:** summary judgment, retaliation, race discrimination, pretext, prima facie
case, genuine issue, territory, protected class, proffered reason, discriminatory, customer,
removal, genuine, abroad, matter of law, material fact, entitled to judgment, reasonable

jury, nonmoving party, extraterritorially, nondiscriminatory, discharging, replaced, military, Civil Rights Act, evidence to support, employment decision, employment practices, moving party, party opposing

## LEXISNEXIS® HEADNOTES                                                    ⊟ **Hide**

Civil Procedure > Discovery > Methods > General Overview

Civil Procedure > Summary Judgment > Standards > Genuine Disputes

Civil Procedure > Summary Judgment > Standards > Materiality

HN1⬇ Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). More Like This Headnote

Civil Procedure > Summary Judgment > Standards > Materiality

HN2⬇ For summary judgment purposes, a dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. More Like This Headnote

Civil Procedure > Summary Judgment > Standards > General Overview

HN3⬇ When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. Further, the court may not make credibility determinations or weigh the evidence in ruling on motion for summary judgment. More Like This Headnote

Civil Procedure > Summary Judgment > Evidence

Civil Procedure > Summary Judgment > Opposition > General Overview

Civil Procedure > Summary Judgment > Standards > Genuine Disputes

HN4⬇ On a motion for summary judgment, once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview

Civil Procedure > Summary Judgment > Opposition > General Overview

Civil Procedure > Summary Judgment > Supporting Materials > General Overview

HN5⬇ Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview

Civil Procedure > Summary Judgment > Supporting Materials > General Overview

HN6⬇ Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview

Civil Procedure > Summary Judgment > Evidence

Civil Procedure > Summary Judgment > Opposition > General Overview

HN7⬇ The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports

his claim. <u>More Like This Headnote</u>

    <u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Opposition</u> > <u>General Overview</u>
    <u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Standards</u> > <u>General Overview</u>
*HN8* <u>Fed. R. Civ. P. 56</u> does not impose a duty on the court to sift through the record in search of evidence to support the nonmovant's opposition to the motion for summary judgment. Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment. <u>More Like This Headnote</u>

    <u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Standards</u> > <u>General Overview</u>
*HN9* Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. <u>More Like This Headnote</u>

    <u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Burdens of Production & Proof</u> > <u>General Overview</u>
    <u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Standards</u> > <u>General Overview</u>
*HN10* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. <u>More Like This Headnote</u>

    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>National Origin Discrimination</u> > <u>Coverage & Definitions</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Racial Discrimination</u> > <u>Coverage & Definitions</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Racial Discrimination</u> > <u>Employment Practices</u> > <u>Discharges</u>
*HN11* Under Title VII of the Civil Rights Act, <u>42 U.S.C.S. § 2000e et seq.</u>, employers are prohibited from discharging an individual, or otherwise discriminating against any individual because of such individual's race, or national origin. <u>42 U.S.C.S. § 2000e-2(a)(1)</u>. <u>More Like This Headnote</u>

    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>National Origin Discrimination</u> >
<u>Federal & State Interrelationships</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Racial Discrimination</u> > <u>Federal & State Interrelationships</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Title VII of the Civil Rights Act of 1964</u> > <u>General Overview</u>
*HN12* <u>Tex. Lab. Code Ann. § 21.001(1)</u> provides for the execution of Title VII of the Civil Rights Act, <u>42 U.S.C.S. § 2000e et seq.</u>, in state law. <u>Tex. Lab. Code Ann. § 21.001(1)</u>. <u>More Like This Headnote</u>

    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Retaliation</u> > <u>Statutory Application</u> > <u>General Overview</u>
*HN13* Title VII of the Civil Rights Act, <u>42 U.S.C.S. § 2000e et seq.</u>, prohibits retaliation against an employee because he has opposed any practice made an unlawful practice by that subchapter. <u>42 U.S.C.S. § 2000e-3(a)</u>. <u>More Like This Headnote</u>

    <u>Civil Rights Law</u> > <u>Contractual Relations & Housing</u> > <u>Equal Rights Under the Law (sec. 1981)</u> >
<u>Proof of Discrimination</u>
    <u>Constitutional Law</u> > <u>Equal Protection</u> > <u>Full & Equal Benefit</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Title VII of the Civil Rights Act of 1964</u> > <u>General Overview</u>
*HN14* The elements of proof necessary to establish a Title VII of the Civil Rights Act, <u>42 U.S.C.S. § 2000e et seq.</u>, claim and a <u>42 U.S.C.S. § 1981</u> claim are identical. <u>More Like This Headnote</u>

    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disparate Treatment</u> > <u>Proof</u> > <u>Burden Shifting</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Racial Discrimination</u> > <u>Proof</u> > <u>Burdens of Proof</u> >
<u>Burden Shifting</u>
    <u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Racial Discrimination</u> > <u>Proof</u> >

cumstantial & Direct Evidence

*HN15* When the record contains no direct evidence of race discrimination, courts employ the three-part McDonnell Douglas burden shifting analysis.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

*HN16* Under the three-part McDonnell Douglas burden shifting analysis, a plaintiff must first establish a prima facie case of discrimination. If the prima facie case is successfully established, the burden then shifts to a the employer to demonstrate a legitimate, nondiscriminatory reason for its action. Finally, if both burdens are met, the burden shifts back to the plaintiff to demonstrate that the employer's nondiscriminatory action was a mere pretext for discrimination.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

*HN17* In order to establish a prima facie case of discrimination, a plaintiff must show, by a preponderance of the evidence, the following: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) after his adverse employment action, he was replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview
Civil Procedure > Summary Judgment > Evidence
Civil Procedure > Summary Judgment > Standards > Genuine Disputes

*HN18* An employment discrimination plaintiff may prove pretext by either showing that a discriminatory reason motivated the employer or by showing that the proffered reason is unworthy of credence. To overcome a motion for summary judgment of course, the plaintiff need only produce evidence to create a genuine issue of material fact concerning pretext. To carry his burden, the plaintiff must produce substantial evidence of pretext.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

*HN19* In an employment discrimination action, evidence that the proffered reason for an employment decision is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

*HN20* In the context of an employment discrimination action, the United States Court of Appeals for the Fifth Circuit has consistently held that the plaintiff's "subjective belief" of discrimination alone is insufficient to establish pretext.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting
Labor & Employment Law > Discrimination > Retaliation > General Overview

*HN21* Courts apply the McDonnell Douglas burden shifting framework to claims of retaliation.  More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting
Labor & Employment Law > Discrimination > Retaliation > General Overview
Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 16342

Page 5 of 12

HN22 ✚ To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in an activity protected by Title VII of the Civil Rights Act, 42 U.S.C.S. § 2000e et seq.; (2) that an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination

HN23 ✚ An adverse employment action has been defined as being an "ultimate employment decision." An ultimate employment decision includes acts such as hiring, granting leave, discharging, promoting, and compensating. More Like This Headnote

Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Private Discrimination

Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)

HN24 ✚ See 42 U.S.C.S. § 1981(a).

Labor & Employment Law > Discrimination > Racial Discrimination > Federal & State Interrelationships

HN25 ✚ See Tex. Lab. Code Ann. § 21.111 (1996).

Governments > Legislation > Interpretation

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

HN26 ✚ Because Title VII of the Civil Rights Act, 42 U.S.C.S. § 2000e et seq., is remedial and humanitarian in nature, it should be liberally construed, resolving ambiguities in favor of the complainant. More Like This Headnote

Governments > Legislation > Statutory Remedies & Rights

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Amendments

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > Extraterritorial Application

HN27 ✚ Although Congress has amended Title VII of the Civil Rights Act, 42 U.S.C.S. § 2000e et seq., to extend Title VII's protections to United States citizens working outside of the United States, they have chosen not to extend the law to cases brought pursuant to 42 U.S.C.S. § 1981. 42 U.S.C.S. § 1981 (a). More Like This Headnote | Shepardize: Restrict By Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Federal & State Interrelationships

Labor & Employment Law > Employment Relationships > At-Will Employment > Employees

HN28 ✚ The Texas legislature has not amended the definition of an "employee" in Chapter 21 to include residents employed abroad. Tex. Lab. Code Ann. § 21.002 (7). More Like This Headnote

**COUNSEL:** [*1] For PAUL GALLASPY, plaintiff: Enrique Chavez, Jr., Law Office of Enrique Chavez Jr., El Paso, TX.

For RAYTHEON TECHNICAL SERVICES COMPANY dba Raytheon Company dba Patriot Overseas Support Company, defendant: R. Glenn Davis, Scott, Hulse, El Paso, TX.

**JUDGES:** FRANK MONTALVO, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** FRANK MONTALVO

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 16342

Page 6 of 12

**OPINION**

## ORDER GRANTING IN PART AND DENYING IN PART "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT"

On this day, the Court considered "Defendant's Motion for Summary Judgment" [Rec. No. 37], "Plaintiffs Response to Defendant's Motion for Summary Judgment" [Rec. No. 43], "Defendant's Reply Brief in Support of Motion for Summary Judgment" [Rec. No. 61], "Defendant's Objections to Plaintiff's Summary Judgment Proof" [Rec. No. 51], and "Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence" [Rec. No. 63]. After careful consideration of the motion, summary judgment evidence, and applicable case law, the Court is of the opinion that "Defendant's Motion for Summary Judgment" [Rec. No. 37] should be **GRANTED IN PART AND DENIED IN PART** for the following reasons:

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff **[*2]** Paul Gallaspy ("Gallaspy") brings the instant action alleging race discrimination by his employer Raytheon Technical Services Company ("Raytheon"). Gallaspy, an African American, has worked at Raytheon for approximately nine years. Gallaspy is as an Organizational Activity Interface ("OAI"). The OAI's function is to provide technical assistance to the United States Army relating to the PATRIOT missile system. In January 2002, Gallaspy was assigned to work at Kunsan Air Base, South Korea, where he was placed with an individual battalion. Each OAI assignment in Kunsan, South Korea is a one-year assignment.

During the relevant time period, Larry Swanson was the Raytheon manager in Massachusetts responsible for administering the contract for OAI services. David Casmus ("Casmus") was a logistics manager located in El Paso, Texas, responsible for coordinating the individual unit's needs for OAIs. Jointly, Swanson and Casmus were responsible for the placement and removal of OAIs.

In January of 2003, Gallaspy was informed his assignment in South Korea would not be extended and would be laid off when he returned to El Paso, Texas. Gallaspy was replaced in South Korea by Jeff Moore ("Moore"), **[*3]** a white male with less experience and qualifications than Gallaspy. Defendant argues the reason for removing Gallaspy was that its customer, the United States Army, requested that he be replaced. Plaintiff argues that there is evidence indicating Gallaspy was removed as a result of Raytheon's decision and also Casmus' desires. In addition to the fact that Gallaspy received above average performance ratings, Plaintiff further alleges that suspicious circumstances surrounded the development of a false evaluation of Gallaspy's performance.

Following these alleged discriminatory employment practices in South Korea and being removed from the South Korea assignment, Gallaspy returned to El Paso, Texas. For the 2004 assignment year, Gallaspy requested and applied for reconsideration of the South Korea assignment. Plaintiff alleges that his replacement, Moore, had performance reviews "subpar relative to Mr. Gallaspy's performance" and "the real reason Mr. Gallaspy was discriminated and retaliated against in the terms, conditions and privileges of his employment is because of his race or ethnicity." [Rec. No. 1].

Gallaspy's complaint alleges racial discrimination associated with his removal **[*4]** from South Korea in December of 2002 and discrimination and retaliation associated with the subsequent denial of his request to return to South Korea in September of 2003. Plaintiff alleges the compensation that Gallaspy would receive in South Korea is almost double and that a certain percentage of the pay is tax-free. Since early 2003, Gallaspy has been employed by Raytheon at Ft. Bliss, Texas.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 16342

Page 7 of 12

Defendant now moves for summary judgment pursuant to FED. R. CIV. P. 56(c).

## II. SUMMARY JUDGMENT STANDARD

*HN1*⚓Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998). *HN2*⚓A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the [*5] nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). *HN3* ⚓When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Inc. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Ragas, 136 F.3d at 458. Further, the court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-152, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

*HN4*⚓Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Matsushita, 475 U.S. at 586. *HN5*⚓Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir.1996). *HN6*⚓Unsubstantiated assertions, improbable inferences, and unsupported speculation [*6] are not competent summary judgment evidence. See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.1994), cert. denied, 513 U.S. 871, 130 L. Ed. 2d 127, 115 S. Ct. 195 (1994). *HN7*⚓The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. Ragas, 136 F.3d at 458.

*HN8*⚓Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. Id.; see also Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. *HN9*⚓Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. Id. *HN10*⚓If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the [*7] burden of proof at trial, summary judgment must be granted. Celotex, 477 U.S. at 322-23.

## III. LAW AND ANALYSIS

Gallaspy alleges a cause of action for race discrimination under 42 U.S.C. § 1981 (2000) ("§ 1981"), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. (2000) ("Title VII") and Tex. Lab. Code Ann. §§ 21.051 and 21.055 (Vernon's 1998) ("Chapter 21"). Accordingly, the Court will analyze Gallaspy's claims of race discrimination under these statutes. [1] *HN11* ⚓Under Title VII, employers are prohibited from "discharging an individual, or otherwise discriminating against any individual because of such individual's race, or national origin." 42 U.S.C. § 2000e-2(a)(1). *HN12*⚓Chapter 21 provides for the execution of Title VII in state law. See TEX. LAB. CODE § 21.001(1). Plaintiff's discrimination claims will be analyzed in the

same manner under Title VII, § 1981, and Chapter 21. *See Shackelford v. Deloitte & Touche, 190 F.3d 398, 404 n.2 (5th Cir.1991).* *HN13*Title VII also prohibits retaliation against an employee **[*8]** "because he has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e-3(a).

## FOOTNOTES

1 *HN14*The elements of proof necessary to establish a Title VII claim and a Section 1981 claim are identical. *Anderson v. Douglas & Lomason Co., 26 F.3d 1277, 1284 n.7 (5th Cir.1994).*

*HN15*Because the record in this case contains no direct evidence of race discrimination, the Court will employ the three-part burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Texas Dep't of C'mty. Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); Byers v. Dallas Morning News, 209 F.3d 419, 425-26 (5th Cir.2000).* *HN16*Plaintiff must first establish *a prima facie* case of discrimination. *Byers, 209 F.3d at 425-26. If the prima facie* case is successfully established, the burden then shifts to a defendant to demonstrate a legitimate, nondiscriminatory reason for its action. **[*9]** *Id.* Finally, if both burdens are met, the burden shifts back to the plaintiff to demonstrate that defendant's nondiscriminatory action was a mere pretext for discrimination. *Id.*

### A. Race Discrimination

*HN17*In order to establish *a prima facie* case of discrimination, Gallaspy must show, by a preponderance of the evidence, the following: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) after his adverse employment action, he was replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated. *Urbano v. Continental Airlines Inc., 138 F.3d 204, 206 (5th Cir.1998), Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999).* Here, the Court will assume, for purposes of this motion, that Gallaspy has established *a prima facie* case of race discrimination. ²

## FOOTNOTES

2 Defendant's summary judgment motion states the following: "For purposes of this motion and without admitting the assumption, Raytheon ⌄assumes Gallaspy can establish a material fact question as to each of the elements of his prima facie case relating to his removal from Korea." [Rec. No. 37].

**[*10]** Plaintiff has thus established a rebuttable presumption that the Defendant unlawfully discriminated against him. Defendant argues that it overcomes this presumption because it has proffered a legitimate, non-discriminatory reason for its actions. As a legitimate, nondiscriminatory reason, Defendant presents evidence demonstrating that Plaintiff was laid off because Raytheon ⌄'s customer, the United States Army, requested that Raytheon ⌄ replace Gallaspy. Accordingly, Defendant satisfied its burden to articulate a legitimate, nondsicriminatory reason for not renewing Gallaspy's assignment to Korea. Under the *McDonnell Douglas* framework, the burden shifts back to Plaintiff, who, in order to survive summary judgment, must raise a genuine issue of material fact as to whether Defendant's proffered reason was merely a pretext for discrimination.

Plaintiff argues Defendant's reasons are merely pretextual. *HN18*Plaintiff may prove pretext by "either showing that a discriminatory reason motivated the defendant or by showing that the proffered reason is unworthy of credence." _Moore v. Eli Lilly & Co., 990 F.2d 812, 815 (5th Cir.1993)_ (internal citations omitted). "To overcome a **[\*11]** motion for summary judgment of course, the plaintiff need only produce evidence to create a genuine issue of material fact concerning pretext." _Id._ To carry his burden, "the plaintiff must produce substantial evidence of pretext." _Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 402-03 (5th Cir.2001)._ *HN19*"Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." _Id._ Further, *HN20*the Fifth Circuit has consistently held that the plaintiff's "subjective belief" of discrimination alone is insufficient to establish pretext. _Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir. 1995)._

Plaintiff argues Defendant's stated reason for the firing is pretext by presenting evidence that he was not removed by the request of the customer, but by discriminatory actions of Raytheon. In addition, Gallaspy states "bizarre circumstances surrounding the July 2002 evaluation of Gallaspy's performance bolster the other evidence of pretext." Plaintiff further argues Raytheon treated Gallaspy differently from employees outside of his protected **[\*12]** class. After reviewing all of the pleadings, the Court concludes that Gallaspy has raised a genuine issue of material fact that Raytheon 's reason for discharging him is a mere pretext for race discrimination. Accordingly, the Court **DENIES** summary judgment on Gallaspy's claims asserting race discrimination in violation of Title VII, § 1981, and Chapter 21. ³

## FOOTNOTES

3 Even though the Court declines to grant summary judgment on this basis, Section III.C. of this Order grants summary judgement on Plaintiff's Section 1981 and Chapter 21 claims because these do not apply extraterritorially and are not applicable to the facts of this case. The Court therefore addresses the extraterritorial application of the statutes separately from the ability of the Plaintiff to prove the elements of the statutes, which is a question on the merits.

### B. Title VII Retaliation

As with Gallaspy's claims of race discrimination, the *HN21*Court applies the _McDonnell Douglas_ burden shifting framework to Gallaspy's claims of retaliation. **[\*13]** _See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998)._ *HN22*To establish a _prima facie_ case of retaliation, Plaintiff must show (1) that he engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse employment action. _Manning v. Chevron Chemical Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003)._ *HN23*An adverse employment action has been defined as being an "ultimate employment decision." _Id._ (citing _Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995), cert. denied, 522 U.S. 932 (1997)_). An ultimate employment decision includes acts "such as hiring, granting leave, discharging, promoting, and compensating." _Dollis, 77 F.3d at 782._

In the present case, Defendant argues that Gallaspy cannot establish a _prima facie_ case of retaliation because he has not been subjected to an adverse employment action after he complained of discrimination and he cannot establish a causal connection between any alleged adverse employment action and his claims of retaliation. Upon review **[\*14]** of the evidence, the Court concludes that Gallaspy has provided proof from which a reasonable jury could find that Plaintiff established his prima facie case of retaliation. Defendant argues that

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 16342

Page 10 of 12

it had legitimate business reasons for the actions occurring after Gallaspy returned to the United States. The Court finds Defendant also established a legitimate, non-discriminatory reason for its denial of Gallaspy's request to return to Korea. Plaintiff argues that the stated reason is merely pretextual.

After reviewing all of the pleadings, the Court concludes Gallaspy Gallaspy has provided proof from which a reasonable jury could find that Plaintiff established his *prima facie* case of retaliation and has raised a genuine issue of material fact that Raytheon ▾'s reason for denying Gallaspy's request to return to Korea is a mere pretext for race discrimination. Accordingly, the Court **DENIES** summary judgment on Gallaspy's claims of retaliation pursuant to Title VII.

### C. Applicability of <u>Section 1981</u> and Chapter 21 to Decisions made in South Korea

Defendant argues that <u>Section 1981</u> as well as Chapter 21 do not apply to decisions made regarding employment in Korea. Defendant **[*15]** concedes that Title VII prohibits American companies from discriminating against American citizens while employed abroad. However, Defendant argues that while Congress amended the definition of "employee" in Title VII to include citizens employed in foreign countries, Congress did not amend <u>Section 1981</u> to expand the class of persons protected by that statue to include citizens employed abroad. Further, the "Texas Legislature also did not amend the definition of employee' in Chapter 21 to include United States, or even Texas residents, employed abroad." [Rec. No. 37].

Plaintiff cites *Ellenwood v. Exxon Shipping Co.*, [4] a United States District Court case from the District of Maine, for the proposition that Chapter 21 should apply to Gallaspy's claims. Plaintiff seems to argue that because the alleged discrimination "may have affected him as an employee in Texas" and it is also affecting his present employment in Texas, Chapter 21 should apply to his claims. Additionally, Plaintiff states that Gallaspy's employment in Korea was in the service of Raytheon ▾'s customer, the United States Army, and the actions occurred on United States military bases. Therefore, Plaintiff argues **[*16]** that because United States military bases are within the jurisdiction of the United States, <u>Section 1981</u> should apply to Gallaspy's claims.

#### FOOTNOTES

[4] <u>1993 U.S.Dist. Lexis 14877 (D.Me. 1993)</u>.

<u>Section 1981</u> states: [HN24]☞"All persons *within the jurisdiction of the United States* shall have the same right *in every state and territory* to make and enforce contracts." <u>42 U.S.C. § 1981 (a)</u> (emphasis added). Similarly, <u>section 21.111 of the TCHRA</u> specifies that [HN25]☞"this chapter does not apply to an employer with respect to the employment of a person outside this state." <u>TEX. LAB. CODE § 21.111</u> (Vernon 1996). While the Court recognizes that Title VII was enacted to secure freedom from discrimination in employment and the Chapter 21 "should be liberally construed" [5] to promote these purposes, the Court is guided by the plain reading of the statutes.

#### FOOTNOTES

[5] See <u>NME Hostpitals, Inc. v. Rennels, 994 S.W.2d 142, 146, 42 Tex. Sup. Ct. J. 710 (Tex. 1999)</u>(holding [HN26]☞"because Title VII is remedial and humanitarian in nature, it should be liberally construed, resolving ambiguities in favor of the complainant.").

[*17] Title VII did not apply extraterritorially until Congress amended the definition of "employee" in Title VII to include United States citizens employed in foreign countries. 42 U.S.C. § 2000e(f). Before Congress amended the definition, the Supreme Court held Title VII does not apply extraterritorially to regulate employment practices of United States employers outside the United States. See *Equal Employment Opportunity Commission v. Arabian American Oil Co.*, 499 U.S. 244, 259, 113 L. Ed. 2d 274, 111 S. Ct. 1227 (1991). *HN27* ⊕Although Congress subsequently amended Title VII in the Civil Rights Act of 1991 to extend Title VII's protections to United States citizens working outside of the United States, they chose not to extend the law to cases brought pursuant to Section 1981. See 42 U.S.C. § 1981(a). Additionally, *HN28*⊕the Texas legislature also has not amended the definition of an "employee" in Chapter 21 to include residents employed abroad. See TEX. LAB. CODE § 21.002(7). As to Plaintiff's assertions that Section 1981 applies to Plaintiff's claims because United States military bases remain within the jurisdiction of the United [*18] States, Defendant correctly points the Court to agreements between the United States and South Korea establishing United States bases in Korea are Korean territory. [Rec. No. 61]. In Article IV of their Mutual Defense Treaty, Korea merely granted the United States the "right to dispose United States . . . forces in and about the territory of the Republic of Korea." Mutual Defense Treaty of October 1, 1953, 5 U.S.T. 2368. Therefore, because the United States has merely been granted the use of Korean territory and Section 1981 only extends to "every State and Territory," Section 1981 cannot provide relief for Plaintiff's claims.

Accordingly, neither Section 1981 nor Chapter 21 applies to Gallaspy's complaint of discriminatory removal from his positions in Korea and summary judgment is **GRANTED** on these grounds.

### D. Defendant's Objections to Plaintiffs Summary Judgment Proof

In ruling on this motion, the Court took into consideration "Defendant's Objections to Plaintiff's Summary Judgment Proof" [Rec. No. 51] and "Plaintiffs Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence" [Rec. No. 63] and therefore the Court **DENIES [*19]** parties' objections to the summary judgment evidence relied upon by the Court and **DENIES** AS **MOOT** the objections to evidence upon which the Court did not rely.

### IV. CONCLUSION

"The very mission of the summary procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *John Hancock Mutual Life Ins. Co. v. Johnson*, 736 F.2d 315, 317 (5th Cir.1984). On Plaintiff's claims pursuant to Section 1981 and Chapter 21, Defendant has demonstrated that it is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. On Plaintiff's claims of retaliation and discrimination pursuant to Title VII, Defendant has not demonstrated it entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that "Defendant's Motion for Summary Judgment" [Rec. No. 37] is **GRANTED IN PART AND DENIED IN PART.**

**SIGNED** this 9th day of August, 2005.

**FRANK MONTALVO**

**UNITED STATES DISTRICT JUDGE**

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 16342

Page 12 of 12

<u>More Like This</u> | <u>More Like Selected Text</u> | *Shepardize*® | <u>TOA</u>

 Gallaspy v. Raytheon Tech. Servs. Co., 2005 U.S. Dist. LEXIS 16342 <u>(Copy w/ Cite)</u> Pages: **13**

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 16342**
View: **Full**
Date/Time: Thursday, February 21, 2008 - 7:20 PM EST

\* Signal Legend:
🌐 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

⟮⟯® LexisNexis® <u>About LexisNexis</u> | <u>Terms & Conditions</u> | <u>Contact Us</u>
<u>Copyright ©</u> 2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.