IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONALD JONES,

Plaintiff,

v.

WACKENHUT % GOOGLE INC.,

Defendant.

Case No: 1:07-CV-0567-CC-RGV

**DEFENDANT THE WACKENHUT CORPORATION'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

COMES NOW Defendant The Wackenhut Corporation (hereinafter "Defendant" or "Wackenhut"), and pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Georgia, submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1.

Wackenhut provides commercial security services to customers on a nationwide basis. (Declaration of Jennifer Turner ("Turner Decl.") at ¶ 2, attached to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment as Exhibit A).

Jones v. Wackenhut % Google Inc. Doc. 76 Att. 14

Dockets.Justia.com

2.

Wackenhut employs security guards, who have numerous job duties, including patrolling customer job sites, reporting security breaches, and communicating with emergency services when necessary. (Turner Decl. at ¶ 3).

3.

Wackenhut's clients determine the number of security guards needed for their businesses and the hours of those guarding assignments. (Turner Decl. at ¶ 4; Deposition of Donald Jones ("Pl. Dep.") at 60, transcript attached to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment as Exhibit B).

4.

Because Wackenhut's business is premised on providing service at or above the customer's expectations, if a customer instructs Wackenhut to end the assignment of a security guard for legitimate reasons, Wackenhut complies with the customer's request. (Turner Decl. at ¶ 4).

5.

Google is a Wackenhut customer in Atlanta. (Turner Decl. at ¶ 5).

6.

Wackenhut has guards on assignment at Google twenty-four hours a day (in first, second and third shifts), seven days a week. (Turner Decl. at ¶ 7).

7.

During any given shift, approximately 16 to 21 Wackenhut guards are patrolling Google's facility and monitoring different security posts. (Turner Decl. at ¶ 7; Pl. Dep. at 93).

8.

Google has entrusted Wackenhut to provide security services to minimize the risk that confidential and proprietary Google information is stolen. (Turner Decl. at ¶ 8; Pl. Dep. at 93-95, 98).

9.

Google and Wackenhut have adopted policies which prohibit Wackenhut security guards from sleeping during their scheduled shifts at Google. (Turner Decl. at ¶ 8; Pl. Dep. at 61-62).

10.

If a Wackenhut guard is caught sleeping during his or her shift, Wackenhut takes disciplinary action against the guard, which could include ending the guard's assignment or terminating the guards' employment. (Turner Decl. at ¶ 8; Pl. Dep. at 61-62).

11.

In 2006, Wackenhut employee Jennifer Turner (who is an African-American and who is 45years of age) served as the Site Security Manager at Google. (Turner Decl. at ¶¶ 5, 16).

12.

Ms. Turner worked onsite at Google and supervised the Wackenhut guards on assignment there. (Turner Decl. at ¶ 5).

13.

In 2006, Ms. Turner was supervised by Carlos Garcia, who was Wackenhut's Account Manager over the Google account. (Turner Decl. at ¶ 6; Declaration of Carlos Garcia ("Garcia Decl.") at ¶ 2, attached to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment as Exhibit C).

14.

Mr. Garcia is Hispanic and is 46 years of age. (Garcia Decl. at ¶ 8).

15.

In 2006, J.E. Penifold was employed with Google as the Facility Manager at Google's Atlanta facility. (Turner Decl. at ¶ 6).

16.

In 2006, if Google had questions or concerns about a Wackenhut guard, Mr. Penifold addressed those issues with Ms. Turner. (Turner Decl. at ¶ 6).

17.

In February 2003, Donald Jones (hereinafter "Plaintiff") began his employment with Wackenhut as a security guard. (Pl. Dep. Exh. 4).

18.

Plaintiff was 61 years of age when he was hired. (Pl. Dep. at 29).

19.

After working on guarding assignments for two other Wackenhut customers, Plaintiff began a guarding assignment at Google in December 2005. (Pl. Dep. at 85).

20.

During his Google assignment, Plaintiff was supervised by Jennifer Turner. (Turner Decl. at ¶ 9; Pl. Dep. at 85).

21.

On July 21, 2006, Mr. Penifold sent an email to Ms. Turner which stated:

> Today at approximately 1645 hrs I was investigating potential loss of power in the facility and walking the south wall looking for EGEN status. During my transit east through the south corridor at the end of the transportation aisle, near post 10, I observed SO Jones asleep at his post in the chair. I went outside of the building to check my EGEN units; on my subsequent re-entry to the building I again past post 10 where SO Jones was still asleep.
>
> We cannot tolerate this type of activity as our business nature is one of utmost security. A single event of this nature could compromise trade secrets by allowing our competition to view our activities. I favor our relationship with Wackenhut . . . and know this is not the standard of service normally provided to us.

Please handle this matter expeditiously.

(Pl. Dep. Exh. 12; Turner Decl. at ¶ 10).

22.

Plaintiff admits that Mr. Penifold complained to Wackenhut about him and that Mr. Penifold sent Ms. Turner an email about the sleeping incident. (Pl. Dep. at 102).

23.

After receiving Mr. Penifold's complaint, Ms. Turner forwarded the email to Carlos Garcia and to Donnie Hixon, who was Wackenhut's Operations Manager in 2006. (Turner Decl. at ¶ 11; Garcia Decl. at ¶ 3).

24.

Based on Wackenhut's receipt of Mr. Penifold's complaint about Mr. Jones and on Wackenhut's policy which prohibits guards from sleeping on the job, Mr. Garcia, Ms. Turner and Mr. Penifold decided to end Plaintiff's assignment at Google. (Garcia Decl. at ¶ 4; Turner Decl. at ¶ 12).

25.

Plaintiff's replacement at Google was Charlie Griffin, an African-American. (Turner Decl. at ¶ 13; Pl. Dep. at 118).

26.

On July 25, 2006, Wackenhut issued a "Final Warning" to Plaintiff which warned that "future related violations will result in progressive disciplinary action, up to and including dismissal." (Pl. Dep. Exh. 11; Garcia Decl. at ¶ 5; Pl. Dep. at 103).

27.

Plaintiff does not know what role Wackenhut management played in making the decision to end his Google assignment or what factors were considered as part of that process. (Pl. Dep. at 121-123, 153).

28.

On July 25, 2006, Mr. Garcia offered Plaintiff three alternative guarding assignments with other Wackenhut customers – Quaker Oats, Yamaha, and General Electric ("GE"). (Garcia Decl. at ¶ 6; Pl. Dep. Exhs. 17, 18, 19; Pl. Dep. at 155).

29.

Plaintiff accepted the GE offer, and he began that assignment on July 26, 2006. (Pl. Dep. at 156).

30.

On August 8, 2006, Plaintiff submitted a letter of resignation to Wackenhut. (Pl. Dep. at 159; Pl. Dep. Exh. 20).

31.

Plaintiff does not allege that he was subjected to any discrimination or retaliation during his GE assignment. (Pl. Dep. at 177-178).

32.

On May 16, 2006, June 14, 2006, and July 24, 2006, Plaintiff filed EEOC charges against Wackenhut. (Pl. Dep. Exhs. 21, 23, 25).

33.

Plaintiff did not allege race discrimination in any of those charges. (Pl. Dep. at 165, 172-173, 178).

34.

On December 11, 2006, Plaintiff received a right-to-sue notice from the EEOC. (Pl. Dep. at 207).

35.

Plaintiff has not identified any comparators about whom Google complained to Wackenhut for sleeping on the job. (Pl. Dep. at 151).

36.

No Wackenhut employees made any discriminatory comments to Plaintiff. (Pl. Dep. at 138-139, 147-148).

37.

Mr. Garcia and Ms. Turner did not consider Plaintiff's race, age, or his EEOC filings when making the decision to end Plaintiff's Google assignment. (Garcia Decl. at ¶ 4; Turner Decl. at ¶ 14).

38.

Mr. Garcia and Ms. Turner believed that Wackenhut's relationship with Google would be negatively impacted if they allowed Plaintiff to remain on assignment at Google, considering Penifold's instruction (in the July 21 email to Jennifer Turner) to "handle this matter expeditiously." (Garcia Decl. at ¶ 7; Turner Decl. at ¶ 15; Pl. Dep. Exh. 12).

Respectfully submitted this 28th day of February, 2008.

DUANE MORRIS LLP

s/ Terry P. Finnerty
Terry P. Finnerty
Georgia Bar No. 261561
James P. Ferguson, Jr.
Georgia Bar No. 258743

1180 West Peachtree Street
Suite 700
Atlanta, Georgia 30309
(404) 253-6900 (telephone)
(404) 253-6901 (facsimile)

Counsel for Defendant
The Wackenhut Corporation

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that this filing complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia. Counsel hereby states that this filing has been typed in Times New Roman 14 font.

s/ Terry P. Finnerty
Terry P. Finnerty

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONALD JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 1:07-CV-0567-CC-RGV |
| | ) | |
| WACKENHUT % GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February, 2008, I electronically filed the foregoing **DEFENDANT THE WACKENHUT CORPORATION'S STATEMENT OF UNDISPUTED MATERIAL FACTS** with the Clerk of Court using the CM/ECF system.

I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Donald Jones
P.O. Box 261
Red Oak, Georgia 30272

s/ Terry P. Finnerty
Terry P. Finnerty
Georgia Bar No. 261561

Counsel for Defendant
The Wackenhut Corporation