## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONALD JONES,

       Plaintiff,

v.

WACKENHUT,

       Defendant.

CIVIL ACTION NO.
1:07-CV-567-CC-RGV

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Donald Jones ("plaintiff"), proceeding pro se, brings this employment discrimination action against his former employer, The Wackenhut Corporation ("Wackenhut"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and, presumably, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. [Docs. 1, 18].[1] Presently pending is Wackenhut's Motion for Summary Judgment.[2] [Doc. 76]. For the reasons stated

---

[1] Google, Inc. ("Google"), against whom plaintiff also brought claims, has been dismissed from this action. [Doc. 51 (adopting Doc. 29)].

[2] In response to the Motion for Summary Judgment, plaintiff filed a "Motion to Defendant Motion for Summary Judgment and Memorandum of Law," [Doc. 81], and an "Objection of Defendants Undisputed Material Facts," [Doc. 82], which the Court will treat as a response. In response to a Reply Brief, [Doc. 84], which Wackenhut filed, plaintiff also filed an "Answer to 'Defendant's Reply Brief in Support of its Motion for Summary Judgment." [Doc. 85]. "Neither the Federal Rules nor the Court's Local Rules allow sur-reply briefs as a matter of right, and the

herein, the undersigned Magistrate Judge hereby **RECOMMENDS** that the Motion

for Summary Judgment be **GRANTED** in its entirety.[3]

## I. FACTUAL BACKGROUND

Wackenhut provides commercial security services to customers nationwide

and, to accomplish that, employs security guards who, as part of their duties, patrol

customer job sites, report security breaches, and communicate with emergency

services when needed. [Doc. 76-15 ¶¶ 1-2; Doc. 76-3 ¶¶ 2-3].[4] Wackenhut's clients

decide how many security guards they need for their businesses and the hours of

the guarding assignments. [Doc. 76-15 ¶ 3; Doc. 76-3 ¶ 4; Doc. 87 at 60]. Because

---

Court normally does not permit sur-replies." USMoney Source, Inc. v. Am. Int'l Specialty Lines Ins. Co., No. 1:07-cv-0682-WSD, 2008 WL 160709, at *2 n.5 (N.D. Ga. Jan. 15, 2008) (internal citation omitted). Because plaintiff has stated no valid reason for filing his "Answer" to the reply, the Court does not consider it herein. Id. (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).

[3] Because the undersigned recommends that the Motion for Summary Judgment be granted, the Court **DENIES** Wackenhut's Motion for Sanctions, [Doc. 66], in which it asks the Court for dismissal of the complaint or other sanctions based on plaintiff's failure to comply with a discovery Order entered on October 31, 2007. [Doc. 55].

[4] In accordance with Local Rule 56.1(B)(1), Wackenhut filed a Statement of Undisputed Material Facts in connection with its Motion for Summary Judgment. [Doc. 76-15]. Local Rule 56.1(B)(2) required plaintiff to file a response to this statement with "individually numbered, concise, nonargumentative responses corresponding to each of [Wackenhut's] numbered undisputed material facts." Plaintiff's "Objection of Defendant's Undisputed Material Facts," [Doc. 82], only objects to Facts 21-24, 27, 33, 35, 37, and 38. Accordingly, the Court deems admitted and supported all other facts in Wackenhut's statement. See Local R. 56.1(B)(2)(a)(2).

Wackenhut seeks to meet or exceed its clients' expectations, if a client asks that a security guard's assignment be ended, Wackenhut complies with that request if it is based on a legitimate reason.  [Doc. 76-15 ¶ 4; Doc. 76-3 ¶ 4].

At the time of the events in question, Google had an Atlanta-based facility at which it utilized Wackenhut's security services to minimize the risk of loss as to its confidential and proprietary information.  [See Doc. 76-15 ¶¶ 5, 8; Doc. 76-3 ¶¶ 5, 8; Doc. 87 at 93-95, 98].  As part of their efforts to minimize this risk, Google and Wackenhut adopted policies that prohibited Wackenhut security guards from sleeping on duty.  [Doc. 76-15 ¶ 9; Doc. 76-3 ¶ 8; Doc. 87 at 61-62].  If a guard was caught sleeping on duty, Wackenhut took disciplinary action against the guard, including re-assignment or termination.  [Doc. 76-15 ¶ 10; Doc. 76-3 ¶ 8; Doc. 87 at 61-62].

In 2006, J.E. Penifold served as Google's Facility Manager over the Atlanta facility.[5]  [Doc. 76-15 ¶ 15; Doc. 76-5 ¶ 6].  In that capacity, Penifold addressed any questions or concerns Google had about Atlanta-based Wackenhut guards with Jennifer Turner.  [Doc. 76-15 ¶ 16; Doc. 76-3 ¶ 6].  Turner, who was a 45-year-old African-American, served as Wackenhut's Site Security Manager at Google, supervising the guards on-site.  [Doc. 76-15 ¶¶ 11-12; Doc. 76-3 ¶¶ 5, 16].  Turner,

---

[5] Penifold no longer works for Google.  [Doc. 76-3, Ex. A ¶ 17].

in turn, was supervised by Carlos Garcia, Wackenhut's Account Manager for the Google account, a 46-year-old Hispanic male. [Doc. 76-15 ¶¶ 13-14; Doc. 76-3 ¶ 6; Doc. 76-13 ¶¶ 2, 8].

In February 2003, when he was 61 years old, plaintiff started working as a security guard for Wackenhut. [Doc. 76-15 ¶¶ 17-18; Doc. 87 at 29 & Ex. 4]. In December 2005, plaintiff was assigned to guard Google. [Doc. 76-15 ¶ 19; Doc. 87 at 85]. During his Google assignment, plaintiff was supervised by Turner. [Doc. 76-15 ¶ 20; Doc. 76-3 ¶ 9; Doc. 87 at 85].

Over the course of his employment with Wackenhut, plaintiff filed three charges of discrimination against Wackenhut with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 76-15 ¶ 32; Doc. 3; Doc. 87, Exs. 21, 23, 25]. On May 16, 2006, plaintiff filed his first EEOC charge against Wackenhut, complaining that he had been "threatened with discharge by Ms. Turner" and stating that Turner told him that she caught him on tape sleeping on the job and that she "is ready to fire everyone." [Doc. 87, Ex. 21]. On that charge, plaintiff checked the boxes indicating that he was filing the charge on the basis of age discrimination and retaliation and, in the narrative portion of that charge, stated that he believed that he was being discriminated against due to his age and retaliated against in violation of the ADEA. [Id.].

On June 14, 2006, plaintiff filed a second EEOC charge against Wackenhut, complaining that wages had been deducted from his paycheck. [Doc. 87, Ex. 23]. This time, plaintiff marked that he was alleging retaliation and stated, in the narrative portion of that charge, that he believed that he had been retaliated against because he previously filed a charge of discrimination. [Id.].

On July 21, 2006, Penifold emailed Jennifer Turner, informing her that he had twice observed plaintiff asleep at his post while on duty. [Doc. 76-15 ¶ 21; Doc. 76-3 ¶ 10 & Ex. 1; Doc. 87, Ex. 12]. In the email, Penifold wrote that Google "cannot tolerate this type of activity" and that "a single event of this nature could compromise trade secrets by allowing our competition to view our activities." [Id.] He ended, stating, "Please handle this matter expeditiously." [Id.]. Turner forwarded the email to Garcia and Donnie Hixon, Wackenhut's Operations Manager. [Doc. 76-15 ¶ 23; Doc. 76-3 ¶ 11; Doc. 76-13 ¶ 3]. Based on Penifold's complaint and on Wackenhut's policy against sleeping on duty, Turner, Garcia, and Penifold decided to end plaintiff's assignment at Google.[6] [Doc. 76-15 ¶¶ 24-25; Doc. 76-3 ¶¶ 12-13; Doc. 76-13 ¶ 4; Doc. 87 at 118]. According to their testimony, based on Penifold's instruction to "handle the matter expeditiously," Turner and Garcia

---

[6] According to plaintiff's testimony, plaintiff was suspended for three days following Penifold's complaint. [Doc. 87 at 134]. Upon re-assignment, plaintiff was replaced by Charlie Griffin, an African-American. [Doc. 76-15 ¶ 25; Doc. 76-3 ¶ 13; Doc. 87 at 118].

both believed that Wackenhut's relationship with Google would have suffered if they did not terminate plaintiff's assignment.  [Doc. 76-15 ¶ 38; Doc. 76-3 ¶ 15; Doc. 76-13 ¶ 7].  Turner and Garcia testified that, in making the decision, they did not consider plaintiff's race, age, or prior filings with the EEOC.  [Doc. 76-15 ¶ 37; Doc. 76-3 ¶ 14; Doc. 76-13 ¶ 4].[7]

On July 24, 2006, plaintiff filed a third EEOC charge, complaining that wages had been deducted from his paycheck and that he had been suspended without pay for three days.  [Doc. 87, Ex. 25].  As the boxes marked indicated, plaintiff filed the charge on the basis of age discrimination and retaliation.  [Id.].  In the narrative portion of that charge, plaintiff wrote that he believed that he had been retaliated against because he had filed a prior charge of discrimination in violation of Title VII and the ADEA.  [Id.].

On July 25, 2006, Wackenhut issued plaintiff a "final warning" notice relating to the sleeping incident, stating that "[f]uture related violations will result in progressive disciplinary action, up to and including dismissal."  [Doc. 76-15 ¶ 26; Doc. 76-13 ¶ 5; Doc. 87 at 103 & Ex. 1].  Garcia offered plaintiff three alternative guarding assignments with other Wackenhut clients, namely Quaker Oats, Yamaha,

---

[7] Plaintiff objects to facts in this paragraph as being moot.  [Doc. 82].  The facts in this paragraph are not moot; they are undisputed and material to plaintiff's claims.

and General Electric ("GE").  [Doc. 76-15 ¶ 28; Doc. 76-13 ¶ 6; Doc. 87 at 155 & Exs. 17-19].  Plaintiff accepted the GE assignment, [Doc. 76-15 ¶ 29; Doc. 76-13 ¶ 6; Doc. 87 at 156], but resigned from Wackenhut's employment three weeks later.  [Doc. 76-15 ¶ 30; Doc. 87 at 159 & Ex. 20].

## II.  STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court views all evidence in the light most favorable to and makes all reasonable inferences in the favor of the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material facts, upon which the non-moving party must then submit specific facts showing a genuine issue for trial.  FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Speculation does not create a *genuine* issue of fact."  Howard v. Oregon Television, Inc., No. 07-15809, 2008 WL 1947094, at *1 (11th Cir. May 6, 2008) (citation and internal marks omitted).  See also Goodman v. Ga. Sw., 147 Fed.

App. 888, 891 (11th Cir. 2005) (unpublished) ("[A]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.") (citation and internal marks omitted); Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("'[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion'" but, rather, "'creates a false issue, the demolition of which is a primary goal of summary judgment.'") (quoting Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931-32 (7th Cir. 1995)).

## III. DISCUSSION

### A. Administrative Exhaustion

In his complaint, plaintiff alleges that Wackenhut discriminated against him on the basis of his race. [Doc. 1 ¶ 6; Doc. 18 ¶ 6]. Wackenhut argues that plaintiff's race discrimination claims fail because he did not first assert such a claim in an EEOC charge. [Doc. 76-2 at 8-9]. The Court agrees.

A Title VII action is limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)) (internal marks omitted). Where, as here, defendant argues that plaintiff's federal court claims exceed the

scope of an EEOC charge, the Court asks whether the allegations the plaintiff makes in federal court are "like or related to, or grew out of" those made in the EEOC charge. Id. If the claims alleged in federal court would not have fallen within the scope of a reasonable EEOC investigation into the claims alleged in the charge, summary judgment on those claims is proper. Robinson v. Rubin, 77 F. Supp. 2d 784, 792 (S.D. Tex. 1999).

As noted, plaintiff filed three EEOC charges during his employment with Wackenhut. [Doc. 76-15 ¶ 32; Doc. 3; Doc. 87, Exs. 21, 23, 25]. In those charges, plaintiff did not allege race discrimination.[8] In the first charge, plaintiff marked the box indicating that he alleged "Retaliation" and "Age" discrimination. [Doc. 87, Ex. 21]. In the second charge, he marked the box indicating only "Retaliation." [Doc. 87, Ex. 23]. In the third, he marked the box indicating again that he alleged "Retaliation" and "Age" discrimination. [Doc. 87, Ex. 25]. In none of the charges did plaintiff mark the box indicating that he alleged "Race" discrimination, and, in his narratives, wherein he alleged the particulars regarding his charges, he never mentioned race discrimination. Given that the substantive nature of age and retaliation claims is different than that of a race discrimination claim, plaintiff's race discrimination claims could not reasonably have been expected to grow out of the

_____

[8] Plaintiff objects to this fact, stating that it is moot. [Doc. 82]. However, this fact is not moot and is undisputed and material to his race discrimination claims.

charges he filed. <u>Williams v. Hager Hinge Co.</u>, 916 F. Supp. 1163, 1173 (M.D. Ala. 1995). Accordingly, plaintiff failed to exhaust his administrative remedies as to any race discrimination claim he makes in this case. For this reason, summary judgment on plaintiff's race discrimination claims is appropriate.[9] <u>See</u> <u>Luna v. Lockheed Martin Corp.</u>, 54 Fed. App. 404, at *1 (5th Cir. 2002) (unpublished) (upholding grant of summary judgment on national origin claim where plaintiff marked box on charge alleging "retaliation"); <u>Carter v. RMH Teleservs., Inc.</u>, No. Civ.A. SA04CA1130RF, 2005 WL 2086036, at *4 (W.D. Tex. Aug. 10, 2005) (dismissing race discrimination claim where plaintiff only checked the "retaliation" box on his EEOC charge); <u>Robinson</u>, 77 F. Supp. 2d at 792 (S.D. Tex. 1999) (granting summary judgment on race and sex discrimination claims where claimant marked only the box for "retaliation reprisal" on his EEOC complaint); <u>Lee v. Kroger Co.</u>, 901 F.

---

[9] Wackenhut argues that all of plaintiff's claims fail because he failed to file a timely charge. Title VII requires a plaintiff to file his complaint in federal court within 90 days after receipt of an EEOC right-to-sue notice. <u>See</u> 42 U.S.C. § 2000e-5(f)(1). Plaintiff received a right-to-sue notice from the EEOC on December 11, 2006. [Doc. 76-15 ¶ 34; Doc. 18 § 11; Doc. 87 at 207]. Ninety-one days later, on March 12, 2007, plaintiff filed the original complaint in this action. [Doc. 1]. The 90th day, however, was a Sunday. Accordingly, plaintiff's complaint is considered timely, and only his race discrimination claims fail on the grounds of administrative exhaustion. <u>See</u> <u>Gomez v. Orleans Parish Sch. Bd.</u>, No. Civ.A. 04-1521, 2005 WL 2050285, at *2 n.2 (E.D. La. Aug. 11, 2005) (finding that the plaintiff timely filed suit where she filed suit on 91st day where the 90th day was a federal holiday); <u>Easley v. Anheuser-Busch, Inc.</u>, 572 F. Supp. 402, 405 (E.D. Mo. 1983) (finding same where 90th day was a Sunday) (aff'd in part, rev'd in part on other grounds).

Supp. 1218, 1224 (S.D. Tex. 1995) (granting summary judgment on race discrimination and harassment claims where plaintiff alleged only retaliation in his EEOC charge). Nonetheless, the Court will address the merits of plaintiff's race discrimination claims along with his age and retaliation claims.

B.     <u>Age and Race Discrimination</u>

Plaintiff alleges that he was discriminated against on the basis of his age and race when he was suspended and removed from his assignment at Google.[10] "Under Title VII, the plaintiff 'bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence.'" <u>Howard</u>, 2008 WL 1947094, at *1 (quoting <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990)). Because plaintiff lacks direct evidence to support his allegation that these actions were tied to his age or race, the Court analyzes these claims under the familiar burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>See</u> <u>Burke Fowler v. Orange County, Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006); <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005); <u>Cofield v. Goldkist, Inc.</u>, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001) (noting that the <u>McDonnell Douglas</u> framework also applies to claims of discrimination under the ADEA). "Under that burden-shifting framework, a plaintiff must demonstrate

---

[10] Plaintiff does not allege that he was subjected to any discrimination during his GE assignment. [Doc. 76-15 ¶ 31; Doc. 87 at 177-78].

a prima facie case of discrimination, and if successful, the burden then shifts to the employer to rebut a presumption of discrimination by producing evidence that its action was taken for a legitimate, non-discriminatory reason." Howard, 2008 WL 1947094, at *2. If the employer meets its burden of production, the burden then shifts to the plaintiff to proffer evidence sufficient to create a genuine issue of material fact that the employer's reason is not an honest one and that unlawful discrimination was the real reason for the action. Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002); Howard, 2008 WL 1947094, at *2 (citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)).

A plaintiff establishes a *prima facie* case in a case such as plaintiff's by showing that (1) he was a member of a protected class; (2) he was qualified for the assignment from which he was discharged; (3) he was suspended and discharged from that assignment; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class. See Kelliher, 313 F.3d at 1275 ; Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). Wackenhut argues that plaintiff fails to show any similarly situated individual outside his

protected classes who was treated more favorably and, for this reason, fails to satisfy his *prima facie* case.[11]

After plaintiff was removed from his post at Google, he was replaced by an African-American security guard, i.e., a member of his own protected class. Thus, plaintiff must show that he was treated differently than someone outside of his protected class or produce some other evidence of unlawful discrimination. Holifield, 115 F.3d at 1562 ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.") (emphasis omitted). On summary judgment, Wackenhut explains that plaintiff was removed from his assignment based on Penifold's complaint that plaintiff was sleeping on duty and his request that Turner handle the matter expeditiously. Despite his own allegation that age and race played a part in that decision, on summary judgment, plaintiff does not identify a single non-black or younger employee who was afforded more favorable treatment

---

[11] Wackenhut also argues that plaintiff was unqualified for the Google assignment because he slept on the job. Because the issue of whether plaintiff actually slept on the job is intertwined with the issue of whether the reasons Wackenhut gives for his re-assignment are pretextual, this issue is best analyzed at the pretext stage of the McDonnell Douglas analysis. Holifield, 115 F.3d at 1562 n.3. Moreover, in light of plaintiff's non-showing on the fourth element, regardless of the outcome of the second element, plaintiff's *prima facie* case fails.

than he was.[12]  [See Doc. 87 at 151].  Likewise, he does not offer any other evidence

of age-based or race-based discrimination.  See id.; Jones v. Winn-Dixie Stores, Inc.,

75 F. Supp. 2d 1357, 1365 (S.D. Fla. 1999).  Even if plaintiff satisfies a *prima facie* claim

of discrimination based on his assertion that he was not sleeping on the night in

question, see Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989), plaintiff

nonetheless fails to create a genuine issue of material fact as to pretext.

Wackenhut has asserted a legitimate, non-discriminatory reason for

suspending plaintiff and removing him from the Google assignment.  On summary

judgment, Wackenhut asserted that plaintiff was suspended and re-assigned

because Penifold told Turner that plaintiff was sleeping on the job, informed her that

this activity could not be tolerated, and asked her to handle the matter

expeditiously, leading Turner and Garcia to believe that, if plaintiff was not re-

assigned, Wackenhut's relationship with Google would be negatively impacted.

[Doc. 87, Ex. 12; Doc. 76-12 ¶¶ 4, 7; Doc. 76-2 ¶¶ 10, 15].  It is plaintiff's burden to

show "'that the proffered reason really is a pretext for unlawful discrimination.'"

Howard, 2008 WL 1947094, at *2 (quoting E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d

---

[12] Plaintiff asserts that Wackenhut denied him discovery on this subject, [Doc. 82], but provides no details on which the Court can assess this challenge.

1265, 1273 (11th Cir. 2002)). Plaintiff fails to satisfy his burden as he offers no evidence of pretext.[13]

Even considering evidence in the record which plaintiff fails to present in response to the summary judgment motion, there is no genuine issue of material fact that the reasons given for plaintiff's suspension and re-assignment are not honest and that, instead, these actions were taken on the basis of age or race. In his deposition, plaintiff stated that Penifold had not seen plaintiff sleeping on the night in question but, rather, lied at Turner's request in order to support his removal. [Doc. 87 at 99-100]. Plaintiff testified that Penifold walked by his post once, not twice, that night, and, when Penifold walked by that one time, he was awake. [Doc. 87 at 100]. According to plaintiff, this testimony establishes that Penifold's complaint was a "setup."[14] [Doc. 87 at 126-27]. The Court disagrees.

---

[13] In response to summary judgment, plaintiff stated that Wackenhut threatened and harassed him during his deposition. [See Doc. 81]. The Court has reviewed the relevant portions of plaintiff's deposition, [Doc. 87 at 140, 142], and finds no harassment, and, in any event, such allegations do not constitute proof of pretext in this case.

[14] Plaintiff states that, on a prior occasion, he was accused of being caught on camera asleep on duty but that he was exonerated when the actual footage showed he was not asleep. [Doc. 87 at 102, 105-06]. Because the camera footage proved exculpatory, plaintiff testified, Turner needed a false eye-witness to bolster her desire to remove plaintiff. [See Doc. 87 at 102, 105]. Plaintiff testified, however, that he was on camera on the night Penifold purportedly observed him, [Doc. 87 at 101-02, 107], and there is no reason why footage from that night could not, as on the prior occasion, contradict the accusation that he slept on the job. Penifold's

Evidence that Penifold lied at Turner's request, if for a discriminatory reason, could constitute evidence of pretext.  Plaintiff's testimony, however, does not create a genuine issue of material fact that Penifold lied, much less that he did so for any discriminatory reason.  Plaintiff makes much of the fact that he was not asleep on the night in question.  Indeed, it is plaintiff's sworn testimony that he was not asleep when Penifold passed by.[15]  This testimony may create a factual dispute as to whether, in fact, plaintiff was sleeping when Penifold said he was.  At the pretext stage, however, this type of factual dispute does not create a genuine issue of material fact as to the existence of unlawful discrimination because it is undisputed that Penifold complained to Turner that plaintiff was sleeping on the job, and Penifold's complaint was the catalyst for terminating plaintiff's assignment at Google.  See Holifield, 115 F.3d at 1565; Damon, 196 F.3d at 1363 n.3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

---

complaint was not, then, as plaintiff contends, an unassailable setup.

[15] Obviously, if plaintiff was, in fact, asleep, he would not necessarily have known whether Penifold passed by on other occasions.  Therefore, plaintiff's testimony that Penifold only passed by once does not establish that plaintiff was not sleeping.  Nonetheless, plaintiff testified that he never fell asleep on the night in question, so the Court considers this contested fact.

Plaintiff states that Turner and Penifold had known each other for two or three years, shared the same office, and were "close friends." [Doc. 87 at 99]. Plaintiff, however, admits that Penifold never told him that Turner asked him to make a complaint, [Doc. 87 at 99], and that he was not present when Penifold submitted the complaint to Turner, [Doc. 87 at 99, 101]. Plaintiff could not point to any conversation that Turner and Penifold might have had regarding plaintiff's re-assignment, nor could he testify, based on his own personal knowledge, as to the contents of such a conversation, if there was one. [Doc. 87 at 119-24]. In short, plaintiff's testimony that Turner asked Penifold to lie is based on nothing more than speculation and conjecture. As noted, speculation and conjecture do not create a genuine issue of material fact for trial. Howard, 2008 WL 1947094, at *1; Goodman, 147 Fed. App. at 891; Cordoba, 419 F.3d at 1181. See also Burrell v. Bd. of Trustees of Ga. Military Coll., 970 F.2d 785, 791 n.15 (11th Cir. 1992) (holding that the plaintiff's testimony did not permit, in that case, the inference that two individuals conspired to have the plaintiff fired).

Even if plaintiff had probative evidence that Turner asked Penifold to lie, which he does not, plaintiff's testimony does not demonstrate that Turner or Penifold acted on the basis of age or race.[16] See Kelliher, 313 F.3d at 1276 n.8

---

[16] It is not entirely clear that plaintiff even believed that Turner's request for Penifold to lie was age-based or race-based. Although he contends that his

(holding that the plaintiff's assertions that the allegations against him were untrue and that his supervisor was "out to get him" did not present proof that his termination was a pretext for age or race discrimination). Plaintiff admitted that he was not alleging that Turner made discriminatory comments about age.[17] [Doc. 87 at 147-48; see also Doc. 76-15 ¶ 36]. Instead, he conclusorily stated that Turner was "getting rid of all the older people on the job" and "bringing in younger people 30 and under" and that her actions "spoke for [themselves]," [Doc. 87 at 144-46], but he could identify no such individual either brought in or removed. [Doc. 87 at 145-46, 168]. Plaintiff's conclusory allegation does not establish that Turner asked Penifold to lie because she wished to remove him on the basis of his age and thus fails to create a genuine issue of material fact for trial.

As for the contention that race played a part in the request, plaintiff testified that Penifold was a "southern white" and, "to [him], . . . a racist" and that "black on

_____

suspension and re-assignment were discriminatory, plaintiff did not state that Turner asked Penifold to submit the complaint because she wanted him removed because he was black or over the age of 40. Rather, plaintiff testified on more than one occasion that Turner did so because plaintiff had filed an EEOC charge against her. [Doc. 87 at 100, 127]. According to plaintiff, the alleged setup "was . . . retaliation." [Doc. 87 at 127; but see Doc. 87 at 134]. Nonetheless, the Court considers whether, despite plaintiff's testimony, there is evidence that Turner or Penifold acted on the basis of age or race.

[17] Plaintiff did not testify that Penifold acted on the basis of age. [See Doc. 87 at 144-45].

black racism," referring to Turner, was "very alive here in Georgia." [Doc. 87 at 136, 138]. These accusations are unsupported and conclusory, at best. Plaintiff admits that he never heard Turner or Penifold make any racist comment. [Doc. 87 at 138-39; see also Doc. 76-15 ¶ 36]. Plaintiff believes that Penifold's alleged lie and Turner's actions speak for themselves in this case, [Doc. 87 at 137-38], but, as noted, plaintiff's beliefs on these subjects are speculative. In short, even if the evidence did show that Penifold lied, at Turner's request, which it does not, it does not establish that Turner or Penifold acted based on plaintiff's age or race. Accordingly, plaintiff additionally fails to create a genuine issue of material fact as to pretext. For these reasons, the Court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Wackenhut on plaintiff's age- and race-based suspension and re-assignment claims.

## C.   Retaliation

Plaintiff alleges that he was subjected to unlawful retaliation for filing charges of discrimination with the EEOC. Specifically, plaintiff alleges that he was retaliated against in that he was suspended and re-assigned away from Google, he was forced to resign, and a total of $137.62 was deducted from his paycheck.[18] As with a claim of discrimination, plaintiff bears the burden of proving retaliation, first by showing a *prima facie* case of retaliation, which involves proof that (1) he engaged in a

---

[18]   Plaintiff does not allege that he was retaliated against during his GE assignment. [Doc. 76-15 ¶ 31; Doc. 87 at 177-78].

statutorily protected activity; (2) he suffered a materially adverse action; and (3) there is a causal connection between the protected activity and the adverse action. Burlington N. & Santa Fe Ry. Co. v. White, __ U.S. __, 126 S. Ct. 2405, 2409 (2006); Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006); Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002); Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999); Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). If plaintiff satisfies this showing, the burden shifts to Wackenhut to articulate a legitimate reason for its actions. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If Wackenhut proffers such a reason, it is incumbent upon plaintiff to show that the proof creates a genuine issue of material fact that this reason is pretextual. Id.

Wackenhut does not dispute that plaintiff engaged in protected activity by filing charges of discrimination. It does, however, argue that, with regard to his resignation-based claim, plaintiff fails to show that he was subjected to a materially adverse action caused by the filing of his EEOC charges and, with regard to the suspension, re-assignment, and wage claims, he fails to present sufficient proof of causation and pretext. For the following reasons, all three of plaintiff's retaliation claims fail.

### 1.    Suspension and Re-assignment

Plaintiff alleges that he was suspended and removed from his assignment at Google because of the charges he filed.  To prove a causal link between protected activity the plaintiff engaged in and a subsequent adverse action, a plaintiff must show that "the protected activity and the negative employment action are not completely unrelated."  <u>Pennington</u>, 261 F.3d at 1266 (internal marks and citation omitted); <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1457 (11th Cir. 1998) (same); <u>Holifield</u>, 115 F.3d at 1566 (<u>citing</u> <u>E.E.O.C. v. Reichhold Chems., Inc.</u>, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).  Part of this showing requires plaintiff to produce proof sufficient to create a reasonable inference or genuine issue of material fact that the decision-maker knew that he engaged in protected conduct prior to taking action against him.  <u>Brown v. Metro. Atlanta Rapid Transit Auth.</u>, No. 06-16434, 2008 WL 60279, at *6 (11th Cir. Jan. 7, 2008) (unpublished) (<u>citing</u> <u>Clover v. Total Sys. Servs., Inc.</u>, 176 F.3d 1346, 1354 (11th Cir. 1999); <u>Raney v. Vinson Guard Serv., Inc.</u>, 120 F.3d 1192, 1197 (11th Cir. 1997)).  <u>See also</u> <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 590 (11th Cir. 2000), <u>abrogated on other grounds as recognized by</u> <u>Crawford v. Carroll</u>, __ F.3d __, No. 07-11603, 2008 WL 2246677, at *9 (11th Cir. June 3, 2008); <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004); <u>Bass v. Bd. of County Comm'rs</u>, 256 F.3d 1095, 1119 (11th Cir. 2001), <u>abrogated on other</u>

grounds as recognized by Crawford, 2008 WL 2246677, at *9; Odom v. Mobile

Infirmary, Civil No. 06-0511-WS-C, 2008 WL 748398, at *9 (S.D. Ala. Mar. 17, 2008).

After all, "[a] decision maker cannot have been motivated to retaliate by something

unknown to him." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th

Cir. 2000).

As noted, Penifold, Garcia, and Turner collectively made the decision to

remove plaintiff from his Google assignment after Turner suspended him from duty

based on Penifold's complaint.[19] [Doc. 76-15 ¶¶ 24-25; Doc. 76-3 ¶¶ 12-13; Doc. 76-13

¶ 4; Doc. 87 at 118, 134-35]. Plaintiff testified in his deposition that Garcia did not

retaliate against him. [Doc. 87 at 196]. Thus, the question is whether Turner was

aware that plaintiff had filed EEOC charges against Wackenhut. In the face of

Wackenhut's challenge as to this issue, plaintiff has failed to respond and failed to

offer any evidence that Turner knew that he had filed the first and second EEOC

charges against Wackenhut. Moreover, in the face of Wackenhut's proffered

explanation regarding plaintiff's suspension and re-assignment, plaintiff has offered

---

[19] Penifold was not a Wackenhut employee, so his knowledge and actions concerning plaintiff's employment are not attributable to Wackenhut with regard to plaintiff's retaliation claims. See Dunn v. Washington County Hosp., 429 F.3d 689, 693-94 (7th Cir. 2005). However, even if Penifold's conduct could be considered on the retaliation claim, plaintiff has not shown that Penifold was aware of the EEOC complaints plaintiff filed. See Wenner v. C.G. Bretting Mfg. Co., 917 F. Supp. 640, 648-49 (W.D. Wis. 1995).

no evidence of pretext.  Because plaintiff has failed to create a reasonable inference or genuine issue of material fact as to causation and pretext, he has failed to meet his burden of proof as to this claim, and the undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of Wackenhut as to this claim.

## 2.    Resignation

Plaintiff alleges that he was forced to resign because Wackenhut would have terminated his employment after receiving his third EEOC charge, which he filed on July 24, 2006.[20]  [See Doc. 87 at 158-60].  Wackenhut argues that plaintiff's resignation was voluntary and thus not a materially adverse action.  The Court agrees.  The undisputed evidence in this case shows that plaintiff resigned.  [See, e.g., Doc. 87, Ex. 20].  Therefore, plaintiff only suffered a materially adverse action if he resigned due to constructive discharge.  Fischer v. Forestwood Co., No. 06-4121, 2008 WL 2009866, at *4 (10th Cir. May 12, 2008).   See also  Coffey v. Chattanooga-Hamilton County Hosp. Auth., No. 98-6230, 1999 WL 824870, at *3 (6th Cir. Oct. 6, 1999) (unpublished).  In order to show that a resignation was a constructive discharge, a plaintiff must show working conditions so intolerable that a reasonable person in his shoes would have felt compelled to resign.  Coffey, 1999

---

[20] Plaintiff acknowledged that Wackenhut had not received his third EEOC charge when he resigned,  [see Doc. 87 at 162], and there is no contention in this case that it had.  Plaintiff contends only that he resigned because Wackenhut was going to terminate him upon receiving that notice.

WL 824870, at *3; <u>Fitz v. Pugmire Lincoln-Mercury, Inc.</u>, 348 F.3d 974, 977 (11th Cir. 2003); <u>Poole v. Country Club of Columbus, Inc.</u>, 129 F.3d 551, 553 (11th Cir. 1997). "[W]hen an employee voluntarily quits under circumstances insufficient to amount to a constructive discharge, there has been no adverse employment action." <u>Nero v. Hosp. Auth. of Wilkes County</u>, 86 F. Supp. 2d 1214, 1228 (S.D. Ga. 1998) (<u>citing</u> <u>Hartsell v. Duplex Prods., Inc.</u>, 123 F.3d 766, 775 (4th Cir. 1997)) (internal marks omitted).

Here, the evidence shows that plaintiff resigned based on his belief that Wackenhut would terminate him when it received the EEOC charge he filed on July 24, 2006. [<u>See</u> Doc. 87 at 160-62]. Plaintiff admits that no one from Wackenhut told him that he would be discharged for filing the charge, [Doc. 87 at 161-62], and that he formed his belief solely on the basis of the notice Wackenhut issued him on July 25, 2006. As noted, the notice stated that "[f]uture related violations w[ould] result in progressive disciplinary action, up to and including dismissal." [Doc. 76-15 ¶ 26; Doc. 76-13 ¶ 5; Doc. 87 at 103 & Ex. 1]. Plaintiff testified that the words "final warning" on that notice meant that he would be fired if he filed another EEOC charge. [Doc. 87 at 161]. Plaintiff's interpretation of that notice is unreasonable. Although the notice stated that plaintiff's job was in jeopardy and that failure to comply with the conditions of the warning would result in termination, the notice

24

itself related to the sleeping incident, not to plaintiff's filing of any charge. [Doc. 87, Ex. 11]. Moreover, "[r]esignations can be voluntary even where the only alternative to resignation is facing possible termination." Nero, 86 F. Supp. 2d at 1228 (quoting Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)) (internal marks omitted). "The threat of termination cannot compel a person to resign because an employee has a choice of resigning or standing and fighting the threatened termination." Nero, 86 F. Supp. 2d at 1228.

In short, the undisputed evidence in this case does not create a reasonable inference or genuine issue of fact that plaintiff involuntarily resigned or resigned due to conditions that were so intolerable that a reasonable, similarly situated employee would have resigned. Accordingly, plaintiff did not suffer a materially adverse action and cannot sustain the second prong of his *prima facie* showing of retaliation as to this claim. For this reason, the Court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Wackenhut on this claim.

### 3. Pay claims

Plaintiff alleges that $91.65 was deducted from his June 9, 2006, paycheck and that $45.97 was deducted from his July 21, 2006, payment in retaliation against him for filing EEOC charges. As with his suspension and re-assignment claims, plaintiff has offered no evidence that Turner or Deming, the only two individuals alleged to have had any involvement with regard to his pay, were aware of his EEOC charges

when these deductions were made. Accordingly, plaintiff's wage deduction claims fail.

## IV. CONCLUSION

For the reasons stated herein, the undersigned hereby **DENIES** the Motion for Sanctions, [Doc. 66], and **RECOMMENDS** that the Motion for Summary Judgment, [Doc.76], be **GRANTED** in its entirety. The clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO ORDERED AND RECOMMENDED** this 17th day of June, 2008.

*Russell G. Vineyard*

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE